(No. 41221.—

PIONEER TRUST & SAVINGS BANK, Trustee, *et al.*, Appellants, *vs.* THE COUNTY OF McHENRY, Appellee.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

JACK M. SIEGEL, of Chicago, and JOSLYN, JOSLYN & GREEN, of Woodstock, for appellants.

RICHARD CROSS, State's Attorney, of Woodstock, and ROY C. PALMER, Special Assistant State's Attorney, of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

We granted leave to appeal to plaintiffs, who are the record title holders and the beneficial owners of land in McHenry County, in order to review the decision of the Second District Appellate Court (89 Ill. App. 2d 257) reversing a judgment of the McHenry County circuit court. The circuit court had declared section 15 of the McHenry County zoning ordinance arbitrary and void as applied to the plaintiff's property, enjoined its enforcement against the property, and directed issuance to plaintiffs of all necessary permits and licenses for the erection of a mobile homes park and mobile homes sales enterprise upon the subject property. The appellate court held that since the plaintiffs failed to show that there was a "public necessity" for granting a conditional use permit for the proposed use it would have been improper under section 15 for the County Board of Supervisors to issue such a permit, that the Board's refusal of the permit was not arbitrary or unreasonable, and that the judgment for the plaintiffs in the trial court was therefore error.

The land upon which plaintiffs seek to establish the mobile homes park and sales enterprise consists of 33 acres of vacant land which is presently zoned "I-1" light industrial district as it was when plaintiffs purchased it. The land is part of a larger tract of 111 acres which plaintiffs bought for approximately $110,000 in 1959. Plaintiffs have since sold some 10 acres. The subject property is contiguous to the Chicago and Northwestern Railroad right of way which forms its northeasterly boundary, and the Northwest Highway, a heavily traveled arterial highway, adjoins the property on the northwest. Forming its western boundary

is Sands Road, and plaintiffs own the tract of approximately 66½ acres zoned for "F" farming purposes which is adjacent to and immediately south of the subject property. Directly across the Northwest Highway from the subject property is land zoned "I-1" which is vacant except for a structure formerly used as a foreign automobile sales and service plant. Across Sands Road to the northwest of the site is a tract of land zoned for "I-1" industrial purposes utilized by the Ero Manufacturing Company and the Major Lighting Control Company. Directly west across Sands Road from the subject property is a par-three golf course, and to the northeast across the Northwestern Railroad right of way is a large tract of land zoned for "I-2" heavy industrial purposes used by the Standard Redi-Mix Concrete Company for a quarry, and the Suburban Oil Company for an asphalt batch plant. Proceeding westward from the subject property along the Northwest Highway are a number of commercial establishments including a driving range, an automobile agency, a motel, a trailer rental facility, a boat company, a furniture store and several restaurants. In the area south of the Northwest Highway, to the west of the subject property, is a residential subdivision described by a defense witness as a "depressed area" because of the improper development of undersized lots and the stigma resulting from inadequate septic tank and water systems. Interspersed with the residential subdivision are a drive-in theatre, a "kiddie" land, and a Baptist church; and across the road which forms the western boundary of the subdivision is a quarry of the Consumers Company.

The master who heard the evidence in this case included the following comment in his findings: "The subject property lies in an area best described as a zoning conglomerate * * *. The area appears to be characterized by lack of order and planning. It is subject to uses obviously more detrimental to adjacent properties than that proposed by plaintiffs."

Prior to the commencement of this action in the trial court plaintiffs filed a petition with the McHenry County Zoning Board of Appeals requesting that a conditional use permit be issued for the use of the subject property as a mobile homes park and sales operation. Under the County's zoning ordinance, trailer camps or trailer sales were permissible in any district upon the issuance of a "conditional use" permit, but no district was provided for the establishment of such uses as a matter of right. After a public hearing, the McHenry County Zoning Board of Appeals recommended that plaintiffs' application be denied and the County Board of Supervisors followed the recommendation, denying the plaintiffs' request for the proposed conditional use. The record contains no indication of the reason for such denial.

Section 15 of the McHenry County zoning ordinance which is attacked as invalid in the factual context of this case enumerates some 24 conditional uses which under the language of the ordinance have "unique characteristics" and thus "cannot be properly classified in any particular district or districts, without consideration, in each case, of the impact of those uses upon neighboring land and of the public need for the particular use at the particular location." Mobile homes parks and mobile homes sales enterprises are included among the ordinance's conditional uses, and the following standards are incorporated in the ordinance as conditions precedent for the issuance of a conditional use permit:

"Standards: No conditional use shall be approved unless, after public hearing, and recommendation of the McHenry County Zoning Board of Appeals, as is provided, the Board of Supervisors shall find:

(1) That there is a public necessity for the conditional use.

(2) That the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare.

(3) That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the

purposes already permitted, nor substantially diminish and impair property value within the neighborhood.

(4) That the establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

(5) That adequate utilities, access roads, drainage, and the other necessary facilities have been or are being provided.

(6) That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.

(7) That the conditional use shall in all other respects conform to the applicable regulations of the McHenry County Zoning Ordinance for the district in which it is located."

The master who heard this case found that all of these "Standards" either have or will be met by the plaintiffs with the sole exception that they failed to establish that there is a "public necessity" for the proposed use. He found further that the public necessity requirement was an "arbitrary, unreasonable and capricious" classification which deprived plaintiffs of their property without bearing any substantial relation to public welfare and was therefore (a) void and unenforceable generally, or (b) invalid as applied to the subject property. The trial court adopted the master's report except that it declared section 15 invalid only insofar as applied to the subject property.

In reversing the judgment of the trial court the appellate court stated: "Such a finding [a public necessity for the conditional use] is, in essence, the basis for the granting of any special use. * * * The burden was on the plaintiffs to prove a public necessity for the special use requested; they assailed the validity of the special use provisions of the ordinance and it was likewise their burden to prove by clear and convincing evidence that it was arbitrary and unreasonable. On the facts before us, the refusal of the County Board was not arbitrary; insofar as we can determine from the record, it was proper." 89 Ill. App. 2d at 267, 270.

We disagree with this conclusion and hold that under the facts of this case the requirement that the plaintiffs

show a public necessity for the proposed use of the subject property as a condition precedent to the granting of a conditional use permit was an unconstitutional deprivation of private property. A comprehensive review of the evidence in this case convinces us of the correctness of the master's findings that the highest and best use of the subject property is for the mobile homes park and sales enterprise proposed by the plaintiffs, that the prohibition of such use is not required by the public health, safety, morals or welfare, and that no adverse effect upon adjacent properties will result if the plaintiffs are permitted to establish the proposed use.

The evidence presented by the plaintiffs in this case included the testimony of Joseph N. Novelle, one of the beneficial owners of the subject property, who testified that the land was placed on the market for sale in 1960 but that no concrete offers had been received. He stated that the proposed site was particularly well suited to use as a trailer park because the hilly contours of the thickly wooded land would prevent the trailers from being readily observed from the highway. George H. Kranenberg, an expert planning and zoning consultant, testified that in view of the topography of the land and wide variety of surrounding uses, the proposed site is suitable and appropriate for use as a mobile homes park and sales agency; further, that the proposed use would have no effect of any kind, either directly or indirectly, on any existing use in the area. Herbert Harrison, a real-estate appraiser and zoning consultant, testified that the subject property could be worth $100,000 if a trailer park and sales enterprise were authorized, but that it is worth only $24,000 under its present classification. Harrison also stated that the major area of population expansion in the County was the southeast quadrant in which the subject property is located.

The defense presented the testimony of intervenor A. H. Collins, a bank vice-president, who owns a residence

located on his 70 acres of farm land situated about 42 acres south of the subject property. He testified that he believed the value of his land would be depressed by the proposed use, but he also admitted that certain permitted uses under the present classification of the subject property would also depress the value of his land, and that the proposed use would not affect the market value of his property for leasing as farm land which is its present use. Robert Hastings, a real-estate broker who had engaged primarily in making appraisals for the Chicago and Northwestern Railroad, testified that he believed the highest and best use of the subject property would be for office research. This witness stated, however, that his opinion regarding the highest and best use of the land related to what the property was "best suited for" and did not take into consideration dollar yield or marketability. Rolf C. Campbell, a city planning and zoning expert, testified that the highest and best use of the subject property from a city planning and zoning point of view would be for industrial use. Campbell admitted that he had made no study of the industrial zoning needs in McHenry County, and that it was conceivable that industrial development of the subject site could result in as much or more traffic than would be generated by use as a trailer park. Intervenor Herbert Lutter, the owner of property to the south of the subject parcel who had gained appraisal experience in the real-estate loan department of a suburban bank, testified that the proposed use would have a detrimental effect on adjacent properties. It was his opinion that the proposed trailer park would hamper future development of his 200-acre farm site as a residential subdivision which he intended to create. In the words of the master this witness "held the incredible opinion that a number of uses authorized [under the present "I-1" classification], such as railroad shops, roundhouses, lumber yards, coal and building material yards, gasoline and fuel oil storage, *etc.* would have no effect on his property while the

operation of a trailer park would have an adverse effect." The final witness presented by the defense was A. O. J. Baumann, a professional real-estate appraiser, who testified the proposed use would have a detrimental effect upon the residential values in the area which were already somewhat depressed. Baumann stated that the highest and best use of property would be measured by "need" and that he believed that McHenry County did not have a need for the proposed trailer camp because there was already an imbalance in the community of an insufficient number of employment opportunities and an oversupply of "residental characteristics". He admitted that the subject property would be worth up to twice as much in value for trailer park purposes as it would under its present zoning classification.

We have sanctioned application of the "special" or "conditional" use zoning technique for those "infrequent uses which are beneficial, but potentially inconsistent with normal uses in the various zones * * *." (*Kotrich* v. *County of Du Page,* 19 Ill.2d 181, 185.) But our approval of this technique does not mean that a determination to permit or deny a special or conditional use is beyond judicial review. (*Hartung* v. *Village of Skokie,* 22 Ill.2d 485, 498.) We have adopted the specific standard that "the denial of a special use permit must bear a 'real and substantial relation to the public health, safety, morals or general welfare.' (*Columbus Park Cong.* v. *Board of Appeals of Chicago,* 25 Ill.2d 65, 71.)" (*Lazarus* v. *Village of Northbrook,* 31 Ill.2d 146, 151-2.) Because a special or conditional use zoning ordinance does not allocate any particular zones for the establishment of these unique uses as a matter of right, the local zoning authorities are vested with broad powers in determining the suitability of a given site for a proposed special or conditional use. For this reason avenues of judicial review must be at least as readily available to the property owner who seeks to establish a special or conditional use as they are in the normal zoning

case where courts stand ready to determine whether the exercise of zoning power "involves an invasion of private rights without reasonable relation to the public welfare." (*Gregory* v. *City of Wheaton,* 23 Ill.2d 402, 406.) The police power of the State is the sole justification for limiting a property owner's traditional right to use his private property as he desires (*City of Loves Park* v. *Woodward Governor Co.,* 14 Ill.2d 623, 625), and "In determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance must be given consideration. [Citation.] The character of the neighborhood and the use to which nearby property is put, may also be taken into consideration. [Citation.] * * * And if the gain to the public is small when compared with the hardship imposed upon the individual property owner by the restriction of the zoning ordinance, no valid basis for an exercise of the police power exists. [Citation.]." (*Anderman* v. *City of Chicago,* 379 Ill. 236, 240-1; see also *Marquette National Bank* v. *County of Cook,* 24 Ill.2d 497, 502; *Liebling* v. *Village of Deerfield,* 21 Ill.2d 196.) In our judgment plaintiffs here have sustained the burden of proving that the McHenry County zoning ordinance is arbitrary and unreasonable as applied to their property because the gain to the public, if any, is small compared to the hardship imposed upon the plaintiffs by the zoning restriction. (*Kuiken* v. *County of Cook,* 23 Ill.2d 388, 393; *Dalkoff* v. *City of Rock Island,* 17 Ill.2d 342; *Kovack* v. *Village of La Grange Park,* 18 Ill.2d 233; *Nott* v. *Wolff,* 18 Ill.2d 362.) "[T]hough there is a presumption of validity in favor of zoning ordinances, where it is clearly and affirmatively shown that a particular ordinance is unreasonable and confiscating in its application, we will not hesitate to declare it unconstitutional. *Northern Trust Co.* v. *City of Chicago,* 4 Ill.2d 432." *Chicago Title and Trust Co.* v. *Village of Wilmette,* 27 Ill.2d 116, 124.

Contrary to the suggestion made by the appellate court, this court has never decided that the absence of a public necessity for a proposed special or conditional use is *alone* a sufficient ground to justify denial of the permit. In *Lazarus* v. *Village of Northbrook*, 31 Ill.2d 146, we noted that it was not there necessary to consider the question whether there might ever be circumstances that would justify exercise of zoning power to prevent overdevelopment of one particular use for which there was no community "need". (31 Ill.2d at 152.) In *Illinois Bell Telephone Co.* v. *Fox*, 402 Ill. 617, we affirmed the trial court order that a special use permit be granted to use the plaintiffs' property for erection of a telephone exchange. In that case we approved an ordinance which provided that the zoning authority "shall approve any use" where that use is necessary for public convenience, but compelling issuance to a willing property owner of a permit to use his property for a publicly needed purpose cannot be construed as authority for denying a property owner the right to use his land for a substantially profitable purpose which, while perhaps not necessary in the contemplation of the zoning authorities, does no harm to the public.

We think that under the facts of this case, the appellate court placed too great an emphasis on the plaintiff's failure to satisfy this one standard of public necessity. In *Sinclair Pipe Line Co.* v. *Richton Park*, 19 Ill.2d 370, 378, we stated that in determining whether a zoning restriction is void as to specific property because the restriction has no basis in public health, safety and welfare, it is proper to consider "the uses to which the surrounding property is or may be put, the care with which the community has undertaken to plan its land use development, and the evidence or lack of evidence of community need for the use proposed by the plaintiff." However, while lack of community need for a use sought to be established on a particular parcel of real estate is relevant to the relative gain to the public, this con-

sideration is not in itself a conclusive or determinative factor( see *Hoffmann* v. *City of Waukegan,* 51 Ill. App. 2d 241, 245), at least where, as here, (1) there is no uniformity of uses in the area, and the heterogenous nature of the surrounding uses as well as the trial testimony sustains the trial court determination that the proposed use would have no adverse effect on the adjacent properties (see *Tillitson* v. *City of Urbana,* 29 Ill.2d 22, 28-9); (2) the denial of the proposed use would in no way benefit the public health, safety or morals; and (3) there is substantial economic loss to the plaintiffs resulting from such denial.

Applying these principles of law to the facts in the instant case, we believe that the trial court properly ordered the issuance of all necessary permits and licenses for the erection of a mobile homes park and sales agency on the subject property. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

> *Appellate Court reversed;*
> *circuit court affirmed.*