PAUL L. JOHNSON, Plaintiff-Appellant, *v.* THE CITY OF ELGIN, Defendant-Appellee.

(No. 60151;

First District (2nd Division)—August 5, 1975.

Adamowski, Newey & Adamowski, of Chicago (Francis X. Riley, of counsel), for appellant.

Jack M. Siegel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Paul L. Johnson (plaintiff) owns certain real property in the City of Elgin (defendant), Cook County, Illinois. The property is zoned, under the defendant zoning ordinance, B4 General Service District.[1] The defendant denied plaintiff's petition for a special use permit to develop a mobile home park on the property in question.[2] Some 3 years later plaintiff filed a complaint for declaratory judgment alleging that this refusal to grant the special use zoning was arbitrary and capricious, and that he was denied due process and equal protection of the law under both the Illinois and Federal constitutions, all of which defendant denied in its answer.

After a bench trial the circuit court of Cook County ruled that plaintiff had failed to show by clear and convincing evidence that the defendant's action was unreasonable, arbitrary or capricious or violative of any of plaintiff's constitutional rights and dismissed plaintiff's complaint. Plaintiff appeals that decision.

The primary question presented for review is whether, based on the facts in this record, the denial of the special use permit to develop a mobile home park in the B4 general service district was arbitrary and capricious, bearing no real and substantial relation to the public health, safety, morals or general welfare. More particularly, plaintiff questions whether the defendant can deny his application for a special use for new mobile homes and at the same time allow additional mobile homes at another location across U.S. Route 20 and within the same zoning district.

In March, 1968, plaintiff petitioned the Elgin city council for a special use permit to develop his property as a mobile home park. The property described in the petition for a special use consisted of 14 lots; 6 of the 14 lots have been owned by plaintiff since 1956; as to the other 8 lots,

---

[1] B4 General Service District, Mun. Code of Elgin, 1972, ch. 21, sec. 108-E permits a number of different business, commercial and service uses. In addition to these uses, the code provides for a number of special uses, including trailer parks.

[2] The terms "trailer" and "mobile" homes were used interchangeably in the record.

plaintiff entered into a contract in 1966 to purchase the 8 lots for $25,000, with knowledge of the B4 general service district zoning as to that property.[3]

The 14 lots in dispute are located on the southerly side of Villa Street, also known as U.S. Route 20, a major thoroughfare running through the City of Elgin. The defendant, using a strip-zoning pattern, has generally classified the property along Route 20 into four business and two manufacturing districts. The area along Route 20, within a number of blocks of the subject property, except for property used as a cemetery, is zoned and used for business purposes. Directly across Route 20 from the subject property, the zoning is B4 and the property adjoining and to the north of the business zoned strip is zoned M1, Limited Manufacturing District. A trailer court is located within the B4 zone and the manufacturing district on the north side of Route 20.

Plaintiff's special use petition for a mobile home park development on the south side of Route 20 was considered by the defendant's zoning board of appeals which, after a public hearing, recommended to the city council that the permit be granted. The city plan commission, after completing its study, recommended that the permit be denied. Over 1 year later the city council denied plaintiff's application. The council cited the following reasons given by the plan commission for the denial of the special use permit:

"1. This is prime business and commercial property. A trailer park is not the best possible use for the land.

2. There would be two intersections within 75 feet of each other with the intersection of Willard and Villa and the intersection of the private road and Villa Street.

3. There are enough mobile home parks in this area at the present time.

4. There would not be a substantial revenue return to offset the potential public expenditure."

At trial, plaintiff introduced three witnesses in support of his case. Margaret Glink, city clerk for the City of Elgin, testified regarding applications made for trailer-mobile park special use permits in the City of Elgin. The records of the defendant, identified by witness Glink, pertained to its action in 1968 and 1969 relative to plaintiff's application for a

---

[3] Plaintiff's complaint in the circuit court included a description of additional property different than that included in the petition for special use presented to the city council. However, plaintiff amended his complaint to conform the property described with that described in the petition for special use considered by the city council. The contract seller and apparent titleholder for the eight lots was not a party in any proceedings either in the city or before the circuit court.

special use, and the action in 1969 granting additions to the trailer park across Route 20 from the subject property.

Paul Johnson, plaintiff, testified to his ownership of the 14 lots, the uses[4] of the surrounding area, and his plan to develop the land as a mobile home park. He stated six of the lots were purchased almost 20 years ago for about $10,000. The other eight lots were contracted to be purchased in 1966 for $25,000, although he had not acquired title to the eight lots; and that he knew the property being purchased was zoned B4 general service district.

Plaintiff's final witness Angel Del Tondo was a photographer who identified certain photographs of the area in question.

The defendant called James Spore, director of community development for the City of Elgin, who testified as to the defendant zoning regulations on plaintiff's property and described the trailer-mobile home parks located in the Elgin area. Spore identified, by exhibit, the location of six mobile home parks in the City of Elgin and nearby vicinity. On these locations there existed 1,242 units of 1,401 planned. Of these units 281 existed of 382 planned on the property across from plaintiff's property on the north side of Route 20, all of which are on property for which uses were granted by the defendant in either a business or manufacturing zoned district.

Spore testified that in his opinion the highest and best use of the subject area was a general commercial use under the existing zoning; and that a trailer-mobile home park in the questioned area would have a depreciative effect on the residential properties to the south. Spore based his opinion on the commercial land uses along Route 20, the traffic conditions, the location of utilities, noise and congestion caused by plaintiff's proposed use[5]; and that it was more advantageous from the standpoint of the city tax base to have the property developed for commercial use rather than as a trailer park.

Thomas M. Loveday, an admitted expert real estate broker and appraiser, described the subject area and testified that the subject property was suitable for the purposes for which it was presently zoned which would permit about 105 uses under the existing zoning ordinance; and that in his opinion the value of the property, as presently zoned, was between $1 and $1.50 per square foot—a total value of $90,000 to $140,-000—and that it would have the same value as a trailer park. Loveday

---

[4] Plaintiff prepared and presented at the trial a "use" map of the area surrounding the subject property. The testimony evidenced a few differences between the map as prepared and the use as of the date of the trial.

[5] Plaintiff's complaint does not set forth the number of units planned for the subject property. However, the minutes of the city council of May 8, 1968, indicate there would be 28 trailers on the 9,700 sq. ft. site.

· testified that in· his.opinion there would·not be a demand in the future for more trailer camps in this area, and that a trailer-mobile home park would have·a·detrimental effect on surrounding properties. Loveday testified that the property to the south and southeast of the subject property is all used as residential, and that the trailer park would cause a loss in · value to the residential property of at least 5% to 10%.

The trial court, in denying plaintiff's petition, held plaintiff had failed · to meet his burden of proof of showing by clear and convincing evidence or by a preponderance of the evidence that the defendant's action was arbitrary, capricious or a denial of due process and equal protection.

## I.

Plaintiff strongly urges that the· denial of the special use permit to · develop a mobile home park in the B4 district was arbitrary and capricious having no relation to the police power of the defendant, and a · denial both of his due process and equal protection rights.

.Special uses are authorized.by our State statute as a means of regulating uses which have a unique, special or unusual impact upon the use or enjoyment of neighboring property. (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—1.1[6].) The municipal code of the City of Elgin specially provides · for such uses. Section 104—I(1) of the zoning code describes a special : use as:

> "To provide for the location of certain uses hereinafter specified which are deemed desirable for the public welfare within a given district or districts, but which have an adverse effect upon nearby properties or upon the character and future development of the district in which they are located  *  *  *."

The grant or denial of a special use follows a .special procedure, and Elgin municipal code, ch. 21, sec. 112—H sets forth the procedures and standards which must be followed to secure a special use.

---

[6] Section 11—13—1.1 of the Municipal Code reads:
"The corporate authorities of any municipality may in its ordinances passed under the authority of this Division 13 provide for the classification of special uses. Such uses may include but are not limited to public and quasi-public uses affected with the public interest, uses which may have a unique, special or unusual impact upon the use or enjoyment of neighboring property, and planned developments. A ·use may be a permitted use in one or more zoning districts, and a special use in one or more other zoning districts. A special use shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities, with prior notice thereof given in the manner as provided in Sections 11—13—6 and 11—13—7. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards."

The record here indicates that on March 27, 1968, when plaintiff filed his petition with defendant, the city zoning code provided in section 108—E(3) that trailer parks were a special use in the B4 general service district. Thereafter on May 8, 1968, the city council, after receiving the recommendations of the plan commission and zoning board, voted to table plaintiff's petition. On May 22, 1968, the city council, acting upon recommendations of its plan commission, voted to not grant "approval of new trailer/mobile home parks, but to allow existing parks to petition for improvements through expansion." [7] On June 25, 1969, the city council of defendant voted to deny plaintiff's petition. Plaintiff in his brief before this court refers to this procedural record, but so far as we can determine from the record, did not challenge it in the trial court. It is generally held that a municipality cannot amend or modify an ordinance by a resolution but must do so by a duly enacted ordinance. (See 8 Ill. L.&Pr. *Cities, Villages, and other Municipal Corporations* § 161 (1954).) There is nothing in this record to indicate defendant by ordinance deleted trailer parks as a special use under section 108—E(3). Thus, so far as this record is concerned, defendant's code still authorizes the grant of a special use for trailer parks in the B4 district.

■■ Trailer parks have been held a proper subject for regulation. As stated in *Village of Cahokia v. Wright* (1974), 57 Ill.2d 166, 169, 311 N.E.2d 153:

> "It is now well settled that within the framework of the police power, the location or use of mobile homes or mobile home parks may be restricted to certain zones, districts or localities  *  *  *."

And their classification as special or conditional uses has been approved. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill.2d 77, 84-87, 241 N.E.2d 454; see also Annot., 42 A.L.R. 3d 598 *et seq.* (1972).) Thus, the regulation of mobile home parks is within the police powers of the defendant, and plaintiff, in challenging the zoning requirements as applied to his property, bears the burden of showing that the denial of his request for a special use permit was an unjustified use of the police power; plaintiff must show the denial of the special use permit bears no real and substantial relation to the public health, safety, morals or general welfare (*Pioneer*); and "must establish by clear and convincing evidence that the existing ordinance, as applied to their property, is

---

[7] The record before us does not indicate any specific amendment or repeal of the provision of Section 108—E(3) which authorizes trailer parks as a special use in the B4 district. The following language appears in Section 108—E(3) of the zoning code:
"Trailer parks, containing not less than 1,800 square feet of lot area for each trailer and in accordance with City of Elgin standards. (Not approved by direction of City Council Action 5/22/68)."

arbitrary and unreasonable and without substantial relation to the public health, safety, comfort, morals or general welfare." *Duggan v. County of Cook* (1975), 60 Ill.2d 107, 111, 324 N.E.2d 406.

As stated in *Duggan,* each decision must be determined on its own facts. In *Duggan,* the supreme court affirmed the appellate court's ruling that the denial of a special use permit for a trailer court was unreasonable and arbitrary, having no substantial and real relation to the public health, safety, morals or general welfare. In that case the area was no longer suited for the use it was zoned, the owner was having difficulty selling the property, and there was a need for the proposed use in that area. The evidence presented showed the property could not be used as zoned, and the plaintiff would suffer undue hardship if not allowed to develop a mobile home park at that location.

■ In the case at bar plaintiff introduced no evidence (i) to show what hardship would result from the enforcement of the present restrictions, (ii) to show defendant's denial bears no real and substantial relation to the public health, safety, morals and general welfare, and (iii) to show that the property could not be used as zoned. Plaintiff urged he should be allowed to develop a mobile home park on the south side of Route 20 because there was one on the north side. It is fundamental in zoning law that "[z]oning classifications must begin and end somewhere." ( *Miller Brothers Lumber Co. v. City of Chicago* (1953), 414 Ill. 162, 170, 111 N.E.2d 149; *Seith v. City of Wheaton* (2nd Dist. 1967), 89 Ill.App.2d 446, 450, 232 N.E.2d 173.) The setting of areas in which particular uses may be allowed is within the province of the municipality, and unless such boundary is proved to be arbitrary and capricious, it will be upheld. (See *Kennedy v. City of Chicago* (1957), 11 Ill.2d 302, 142 N.E.2d 697; *DeBartolo v. Village of Oak Park* (1947), 396 Ill. 404, 71 N.E.2d 693.) In our opinion the mere fact mobile homes are allowed on one side of a street does not mean it is arbitrary and capricious to prohibit them on the other side for zoning lines must begin and end somewhere.

While both sides of the street in this case are zoned B4, their immediate surroundings are quite different. There is a residential development which abuts and adjoins plaintiff's property, while a manufacturing district borders the mobile home park on the north side of Route 20. The residences near the trailers on the north side of Route 20 appear to be pre-existing, nonconforming uses; the residences on the south side of Route 20 are within the R2 single-family residence use specified for that area.

■■ The plaintiff's only evidence consisting of records of certain proceedings in defendant's city council, zoning board and plan commission, his land-use diagram and photographs of the immediate area fail to meet any of the requirements imposed upon a party attacking the action of the

defendant. On the other hand the evidence presented by the defendant, which stands uncontradicted in this record, is that the highest and best use is the present B4 classification, the property can be developed and used under the present zoning classification, that plaintiff's proposal would have a depreciative effect on the nearby residential properties, and that although plaintiff, upon completion of the contract to purchase will have invested $35,000 as cost for the property, as of the time of the trial the value as zoned was between $90,000 to $140,000. Certainly those facts do not establish that the action of the defendant was arbitrary, capricious or in violation of any constitutional right. The trial court was correct in holding that plaintiff failed to meet his burden of proof.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.