CALVIN FRELK *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF KENDALL *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 75-10

Opinion filed November 30, 1976.

Dallas C. Ingemunson, State's Attorney, of Yorkville, Stanley R. Stiles, and Tyler, Peskind & Solomon, both of Aurora, for appellants.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The plaintiffs petitioned for a special use permit to allow them to mine sand and gravel on 43 acres of land located about one mile from the Caterpillar plant on Cannonball Trail south of Aurora. The Kendall County Planning Commission approved the proposed use but the petition was denied by the Zoning Board of Appeals of Kendall County and the

Kendall County Board of Supervisors. Subsequently, the circuit court, in an administrative review and declaratory judgment proceeding, held a hearing and ruled that the county zoning ordinance was unreasonable, arbitrary, confiscatory, unconstitutional and void as applied to appellees' property. The court further found that the findings, decisions and recommendations of the Zoning Board of Appeals and the Board of Supervisors of Kendall County were against the manifest weight of the evidence. The court held that the real property involved could be used by the plaintiffs for the purpose of mining, excavating and sale of sand and gravel, topsoil and aggregate or minerals, including the operation of the necessary equipment. Lastly, the court enjoined the officers, agents and servants of Kendall County from enforcing or attempting to enforce the Kendall County Zoning Ordinance as applied to the subject property. In making the above findings, the court further ordered that the plaintiffs be restricted by various and sundry limitations imposed upon them, including the completion of the mining operations within a period of five years and creation of a landscaped artificial lake of approximately 18 acres on the premises from which the gravel and sand had been removed. To enforce the provisions of this order, the court directed the plaintiffs to deposit a surety bond in the sum of $20,000, conditioned upon the completion of development and reclamation of the property as indicated in the order.

In their appeal, the defendants contend that the evidence before the trial court was insufficient to support the trial court's order granting the requested special use. They argue that the trial court erred in permitting the gravel pit rezoning upon insufficient evidence on the ground that the same evidence was considered by the Zoning Board of Appeals and the Board of Supervisors of Kendall County when they denied the requested gravel pit rezoning.

The property in question consists of a 43-acre tract which is part of a 120-acre farm owned by the Frelk brothers. The tract immediately adjoining the farm to the west is zoned R-3, one-family residential, but part of it is used for farming; the property immediately to the south is zoned agricultural and is used for farming; part of the property immediately to the north of the farm is zoned agricultural and is being used partly for farming and partly R-3, one-family residence; the property immediately to the east, which is presently being used for farming, is zoned in part agricultural and in large part M-1, Limited Manufacturing. There does not appear to be any coherent plan to the zoning in the area. There is a Caterpillar plant a mile, more or less, northeast of the Frelk property. Because of the Caterpillar factory, Cannonball Trail, which runs along the north side of the property, is very heavily travelled especially at certain times of the day. There are about

four houses west of the property on Cannonball Trail, the nearest being 900 feet away. Further to the west there are two small subdivisions; Storybrook Highlands which lies to the south of the road and Willowbrook, which lies to the north. Blackberry Creek runs through Willowbrook. As stated by a member of the zoning board, the area is not very densely populated.

There is a very good sand and gravel deposit on the 43-acre tract which the Feltes brothers, sand and gravel dealers, agreed to mine for a royalty, subject to rezoning to permit such use. The Frelk brothers petitioned for the property to be rezoned either agricultural or M-2, general manufacturing (at the time the property was zoned R-3) with a special use permit for sand and gravel mining. The Zoning Board of Appeals, after a hearing, denied the petition, finding:

"1. That said property is presently zoned 'R-3' and is contiguous with 'M-1' and agricultural.

2. That there is an excellent supply of gravel within four miles of proposed site.

3. That the roads would not stand this type of traffic.

4. That the increase in traffic due to the operation of this pit at the present time would warrant an objection."

The County Board of Supervisors thereafter denied the plaintiff's petition.

The complaint herein consisted of two counts. The first count sought to have the court declare that the Kendall County Zoning Ordinance, as applied to plaintiffs' property, was unconstitutional and void. The second count requested judicial review of the entire record of all proceedings before the Zoning Board of Appeals of Kendall County and the County Board of Supervisors of Kendall County.

While in form the plaintiffs sought both a declaratory judgment and administrative review, since the trial court was not limited to review of the administrative hearing but received evidence as well, we will treat this solely as a suit for declaratory judgment. Before the trial court's judgment was rendered, the property was rezoned agricultural and the trial court, in its judgment, took judicial notice of this rezoning.

A somewhat concise summation of the testimony before the Zoning Board of Appeals reviewed by the trial court follows. A Mr. Sharkey, the County Superintendent of Highways, testified that Cannonball Trail was a good road of B-5 construction designed to carry present truck traffic. He testified that, while it was not designed for future traffic, the road problem could be worked out at some cost. There was testimony before the Board that the gravel pit would not appreciably affect the level of the wells or the quality of the water in the area. Before the Board, Howard Feltes, who proposed to operate the gravel pit on plaintiffs' property, testified that he operated other gravel pits and that the water in them was not

stagnant. He stated that in one the water was 15'-20' deep, was clear and supported fish life. He further testified that there were other depleted gravel pits which contained fresh, clear water. As an example, he cited the Lucky 50 Club, whose gravel pits provides the best swimming in the area. LaVerne Feltes testified that there would be no dust from the mining operation because the sand and gravel would be mined wet, reducing dust, and a blacktop road would be built on the property to eliminate dust from the truck traffic. A Mr. Palmer testified that he has a gravel pit on his property currently being worked by the Feltes. He testified that there is some noise from the operation of the gravel pit but that the dragline is run by a diesel motor which makes no more noise than a farm tractor pulling a plow. Likewise, the crusher would not make any substantial noise as the equipment would be operating below ground.

George Frelk testified before the Board that he could sell the property as farmland for $2000-$2500 an acre but that the value of the gravel operation on the property would make the property worth $4000-$5000 an acre.

Approximately 17-18 property owners in the area testified before the Zoning Board of Appeals as objectors to the proposed granting of the permit for the removal of the gravel. Their objections pertained to noise, alleged depreciation of their premises, increased truck traffic on Cannonball Trail and, in substance, that they did not wish the permit to be issued. However, Mr. Larson, the Chairman of the Zoning Board of Appeals, stated that the reclamation of the property as proposed, after the gravel had been removed, would raise the value of the neighboring land. Mr. Sharkey, the County Superintendent of Highways, testified that there was definitely a need for more gravel sources in Kendall County. He testified that while a new gravel pit had opened 4.1 miles west of the property, that competition was needed. He testified further that if there were a shorter haul than the price of the gravel would come down. He did not know if the other gravel pits in the area would be sufficient for the present needs. Both Mr. Sharkey and Mr. LaVerne Feltes agreed that there was a good supply of gravel on the proposed site and that it would last for a number of years.

At the trial the complete record from the Zoning Board of Appeals was reviewed by the court and, as indicated, additional evidence was received by the trial court. Without going into detail, a Mr. Hutchinson, a real estate broker, although not a qualified appraiser, testified that in his opinion the houses in the Willowbrook subdivision located some 1400 feet from the proposed operation would not be affected. Mr. Howard Feltes, the proposed operator of the gravel mining operation, testified that, depending upon the need and the time of year, the number of trucks that would be operated on any given day would vary from 30-150. A Mr. Baumann was called by the plaintiffs under section 60. He testified that he

owned the first farm to the east of the subject premises and that he was willing to sell his farm, which was zoned M-1, for manufacturing purposes.

On behalf of the defendants at the trial, additional testimony was taken from some seven objectors who testified as to their objection to the proposed issuance of the permit for the gravel operation, in substance, the same as testified to before the Zoning Board of Appeals. Additionally, Leonard Stark, a resident of the Willowbrook subdivision, who had a Ph.D. in microbiology and water pollution, testified for the defendants. He testified that where there was a body of water with no outlet or inlet, "putrefication is the problem." Mr. Stark had not studied water circulation, had no formal instruction as to lake construction and his courses did not apply to the flow of water in nature. Further, he did not know the condition of the soil on the Frelk farm. Thomas Usry, the sheriff of Kendall County, testified as to traffic studies conducted on Cannonball Trail, the roadway immediately in front of the subject premises, and stated that the traffic count showed 3,226 vehicles per day. He testified further that the peak periods of traffic on Cannonball Trail occurred between 6-9 in the morning and 3-5 in the evening, with another peak near the midnight hour. The peak traffic was directly related to employees driving to and returning from the Caterpillar plant, which is about 1 mile northeast of the Frelk property, in the morning, evening and around midnight. He further testified that the operation of gravel trucks from the premises in question would slow down the traffic on Cannonball Trail. However, he also testified that the speed limit should be reduced to 45 mph on Cannonball Trail. He stated that the slow moving heavy gravel truck traffic would present a traffic hazard.

As noted above and contrary to defendants' assertion that the property in question is zoned R-3, Residential, we find that the Zoning Board of Appeals decided that the residential zoning was indeed inappropriate and rezoned the property agricultural while this suit was pending in the trial court. This amendment is binding on the parties and the court properly took judicial notice of the rezoning. *Ward v. Village of Elmwood Park* (1955), 8 Ill. App. 2d 37, 130 N.E.2d 287.

■■ Accordingly, the question before this court is whether the plaintiffs proved by clear and convincing evidence that the denial of the special use permit was arbitrary, capricious and unreasonable in that it bore no real or substantial relationship to the public health, safety, morals or general welfare. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454; *Kraegel v. Village of Wood Dale* (1973), 10 Ill. App. 3d 486, 294 N.E.2d 64; *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 325 N.E.2d 105.) Moreover, a petition for a special use differs from a petition for a variance. In applying

for the former the petitioner need not show undue hardship whereas when seeking the latter, he must. *Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 450, 154 N.E.2d 323, 325.

■■ It must be noted that here we are not concerned with whether the plaintiffs will be allowed to use their surface property in a certain way; rather, the question before the court is whether the plaintiffs will be allowed to use their subsurface mineral property at all. The Supreme Court in *Midland Electric Coal Corp. v. County of Knox* (1953), 1 Ill. 2d 200, 215-16, 115 N.E.2d 275, 283-84, in considering the use of farmland for strip mining at the surface, stated:

> "It will be observed that the conflict in those cases usually involved a prohibition against a property owner using his property for a filling station, apartment building, industrial or commercial enterprise. He could, however, use his property for specified 'permissive uses.' Such is not so in the present case. Zoning that prevents mining has the effect of prohibiting any use at all of mineral property. Authorization to use the surface for farming purposes provides no use for the mineral property beneath it. The plaintiff has been denied the right to mine 6,500,000 tons of coal that lies beneath 1300 acres of land. The instant resolution does not regulate the use of that property but denies its use without compensation. In *Tews v. Woolhiser*, 352 Ill. 212, the court had before it an analogous situation."

The supreme court went on to say, after discussing the *Tews* case:

> "It will be noted that there no permissive use was available for the surface property. Here, no permissive use is available for the mineral property. In each instance the usefulness of the property is destroyed. Following the logic of the *Tews* case, if the public is interested in the plaintiff not mining its coal, the public and not the corporation should bear the cost of such restrictive measure."

Defendants argue that mere proof by the plaintiffs that they have a good gravel deposit is not sufficient evidence alone to mandate rezoning to permit the mining of that deposit. In support of this contention the defendants have cited *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454. Defendants have set up four considerations to be given by the court in determining whether the invasion of property rights under a purported police power of the State is unreasonable, including a statement that consideration should be given to "a public necessity" for the proposed use. *Pioneer* does not include the last statement. As a matter of fact, in *Pioneer* the Supreme Court specifically stated:

> "* * * and hold that under the facts of this case the requirement that the plaintiffs show a public necessity for the proposed use of

the subject property as a condition precedent to the granting of a conditional use permit was an unconstitutional deprivation of private property." (41 Ill. 2d 77, 81-82, 241 N.E.2d 454, 457.)
The court further stated:

"Contrary to the suggestion made by the appellate court, this court has never decided that the absence of a public necessity for a proposed special or conditional use is *alone* a sufficient ground to justify denial of the permit." (41 Ill. 2d 77, 86, 241 N.E.2d 454, 459-60.)

Likewise, defendants have cited *Elmhurst-Chicago Stone Co. v. County of Kane* (1970), 129 Ill. App. 2d 190, 262 N.E.2d 612. In that case we found, as in the case before us here, that the operation would be highly profitable to the plaintiff. While there was conflicting testimony in the *Elmhurst-Chicago Stone Co.* case, we held that each case must stand on its own facts and circumstances. In *Elmhurst-Chicago Stone Co.* we were considering the refusal of the Kane County authorities to issue a special permit for the use of plaintiff's property for gravel mining. That case was, of course, a declaratory judgment action as is, in part, the one before us now. We pointed out in *Elmhurst-Chicago Stone Co.* that plaintiff might also seek judicial review from an adverse legislative determination denying the special use permit without directly attacking the constitutionality of the underlying zoning classification as applied to his property. In the case before us the plaintiffs have not only sought administrative review but have asked for a declaratory judgment. The trial court found, that the denial of the special use permit was unconstitutional. As in *Elmhurst-Chicago Stone Co.*, we are of the opinion that the action of the Zoning Board of Appeals and the Board of Supervisors on the petition herein was arbitrary and unreasonable. We further find, as we did there, that the plaintiffs have, in fact, sustained their burden of proof. See *Midland Electric Coal Corp. v. County of Knox.* We do not, of course, find that every gravel deposit located in the State must be mined, as stated by the appellants herein, but do state, as did the supreme court in *Pioneer Trust & Savings Bank v. County of McHenry,* that:

"* * * the denial of a special use permit must bear a 'real and substantial relation to the public health, safety, morals or general welfare.' "

We find herein that in denying plaintiffs' petition, the Zoning Board of Appeals made no finding whatsoever that the denial was based upon a substantial relation to any of the above. Neither do we find that the subsequent action by the County Board of Supervisors in denying the permit was based on such considerations.

While the evidence may have been in dispute as to whether the mining

of this sand and gravel was absolutely necessary, there is no dispute that the mining would serve the public convenience.

■■ The trial judge heard the witnesses testify, reviewed in detail the record of the hearing before the Zoning Board of Appeals and concluded that the plaintiffs had sustained their burden of proving that the Board's action in denying the special use permit was unreasonable and arbitrary. Under the facts of this case we will not substitute our judgment for that of the trial court.

■■ For the foregoing reasons we find that the trial court correctly concluded that the denial of the special use permit bore no real, substantial relation to the public health, safety, morals or general welfare. We further hold that the trial court was correct in determining that the County Zoning Ordinance, as applied to plaintiffs' property, was unreasonable, arbitrary, confiscatory, unconstitutional and void. The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, J., concurs.