THE LASALLE NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF KENDALL *et al.*, Defendants-Appellants.

Second District   No. 76-182

Opinion filed December 16, 1977.

Dallas C. Ingemunson, State's Attorney, of Yorkville, and Matthews, Jordan, Dean, Eichmeier & Petersen, and Reid, Ochsenschlager, Murphy & Hupp, both of Aurora, for appellants.

Joseph H. Barnett, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiffs, LaSalle National Bank, the title holder of record under a land trust, and Donald J. Hamman, the sole beneficiary of that land trust, petitioned for a special use permit to allow Hamman to mine sand and gravel from a 198.3-acre portion of the plaintiffs' 247-acre farm in Kendall County, Illinois. As a result of this petition hearings were held before the appropriate zoning bodies. The initial hearing of any consequence in this matter was held before the Kendall County Zoning Board of Appeals which voted to recommend denial of the special use petition. Subsequent to the action of the Zoning Board of Appeals, the Kendall County Board of Supervisors twice considered the petition and on September 10, 1974, voted 7-2 to deny the plaintiffs' petition for a special use to mine gravel on the subject property.

A two-count complaint for declaratory judgment and administrative review was filed by the plaintiffs in the circuit court of Kendall County on October 15, 1974. On May 12, 1975, the court dismissed the count dealing with administrative review and, sitting without a jury, heard testimony as to the declaratory judgment. Various exhibits were also introduced and admitted, including the transcript of the proceeding before the Zoning Board of Appeals, which was admitted by stipulation. After reviewing the written briefs of the parties, the court, on January 21, 1976, entered a judgment for the plaintiffs which declared that the Kendall County Zoning Ordinance as applied to the plaintiffs' property was "unreasonable, arbitrary, confiscatory, unconstitutional and void." The circuit court order enjoined the officials of Kendall County from enforcing the Kendall County Zoning Ordinance as to the plaintiffs' property, provided only that the plaintiffs' plan of development and

reclamation be submitted to the Kendall County Planning Commission and the County Board for further hearings. The circuit court reserved jurisdiction over the case for the purposes of enforcement of its order. The defendants, who include the various Kendall county agencies involved in the zoning hearings, the Village of Oswego, various objector school districts and property owners who were individual objectors to the petition for special use, have appealed the circuit court's order.

There are three issues present in this appeal which are necessary for its determination: first, whether the trial court applied the proper legal standards to its consideration of this case; second, whether the finding of the trial court is contrary to the manifest weight of the evidence; and, third, whether the judgment order entered by the trial court was properly drafted.

The details of the proposal for the development of the project, submitted by Hamman to the zoning authorities and at trial, are relevant to our considerations of this appeal. The gravel excavation operation within the project would be set back 600 feet from Route 71, 450 feet from the southern boundary and from 300-600 feet from the eastern and western boundaries of the property. The initial excavation, using heavy equipment and taking approximately 60 days, would take place on a 5- to 10-acre plot in the southeast corner of the excavation area, approximately one-half mile from any residence. Hamman proposes to remove the overburden from the initial plot and construct a 6- to 8-foot earthen berm around the excavation area. The berm, a rounded earthen ridge, would then be planted with vegetation and trees with the intended purpose of screening the view of, and muffling the noise from, the excavation operation. After the construction of the perimeter berm, the sand and gravel aggregate would be removed and processed down to the level of the water table, which on this property lies at 18-20 feet below ground level. The removal and processing equipment would then be placed inside the resulting pit. Hamman would then remove gravel to a depth of 30 feet using a dragline. After the processing of the initial excavation, Hamman intends to proceed to the next 5- to 10-acre plot immediately west of his initial excavation. There the overburden would be removed and the sand and gravel aggregate extracted by mining into the face of the initial excavation. This process would continue until the western boundary of the project's excavation is reached. This method of extraction would then proceed back and forth across the property in 5- to 10-acre increments until the final portion is reached at the northern boundary of the excavation area. During this process only one or two conveyor belts would be above ground. It is estimated that it would take 10-15 years to complete the removal of the sand and gravel aggregate from the project area. Hamman intends to mitigate any possible dust

problem by watering the excavation area. In addition, Hamman proposes that every truck leaving his facility would be hosed off to eliminate problems of loose sand or gravel in transit.

Hamman also proposed a plan for reclaiming the project area for residential development concurrent with the gravel excavation process. The plan of redevelopment which appears in the record calls for a 94-acre irregularly contoured lake surrounded by a 104-acre residential area. As each 5- to 10-acre parcel of land within the excavation area is processed it would be graded with the excess overburden from that portion of the project which would become the lake. This overburden would be built up on the perimeter area and sloped down to the water level of the lake. Hamman then proposes to develop and market residential lots in the project while the excavation is in progress. Hamman will personally manage the project and will continue to reside with his family on the northern portion of his property. The processed gravel and sand would be sold by Hamman directly to anyone who needs it and not to an exclusive customer.

Three objections to the project were raised before the zoning bodies, at trial and on appeal by the various defendants. The first was that the special use would be in the path of the residential development of the Village of Oswego and that leaving the 35 feet of gravel beneath the site as drainage for residential use would be a fit and proper use for a natural resource. Secondly, the special use would diminish the value of property surrounding the site. Thirdly, the special use would present dangers to the public, including an allegedly harmful increase in truck traffic near area schools; causing alleged damage to wells in the area; being an "attractive nuisance" for children and a haven for undesirable elements; producing dust and noise; and bringing an "unsightly industrial flavor" to a placid rural area.

To sustain his burden of proof in support of the project before the Zoning Board of Appeals and before the trial court, Hamman submitted testimony that the proposed project would have no undue adverse effect upon the property values of the area and that gravel pits had been successfully reclaimed for residential purposes or co-exist in harmony with surrounding residential uses in other areas. The lake that would result from the project would tend to increase the value of adjoining property. The testimony further showed that a very rich deposit of high quality sand and gravel aggregate exists within the bounds of the project to a depth of 35 feet beneath a 3½-foot overburden. The deposit is apparently of very high quality as it contains very little silt or clay, making the extraction and processing economical and the gravel appears to be very hard, making it acceptable for a wide range of construction uses. Testimony submitted before the Zoning Board of Appeals showed that

deposits such as the one existent on Hamman's property are relatively rare in Kendall County and that there is a wide market existing in the area for material mined from the project. Testimony also was presented that the drilled wells on neighboring property would not be affected by the project. Finally, testimony was tendered to show that gravel truck traffic in other areas similarly situated does not, *per se,* create a traffic hazard to school buses or to school children.

Testimony was presented at trial in support of the defendants' objections. In substance the project lay in an area designated as low density residential on the Oswego Comprehensive Planning map. Expert opinion was offered that the highest and best use of the project site would be low density residential due to its location and the good drainage afforded by the gravel deposit; that the proposed project would tend to hamper the southward development of Oswego for 8-10 years; that gravel pits are unsightly, noisy, create dust, lower property values and are incompatible with residential growth, *per se.* It was further represented that the policy of Kendall County is to preserve agricultural land as a valuable natural resource and that the addition of even one additional vehicle to the traffic presently using Route 71 is of great concern to the school board and police authorities as an additional hazard to school buses and school children using that highway. Finally, it was contended that it is the experience of police authorities that abandoned gravel pits and limestone quarries may act as a haven for illegal activities and as a dangerous attractive nuisance to children.

On cross-examination at trial the various witnesses for the defendants did make certain concessions. It was conceded that in at least one instance a high-quality residential development co-exists adjacent to an operating limestone quarry which, in the opinion of William S. Lawrence, a planning and zoning consultant for the Village of Oswego, is more noisy and unsightly than a gravel pit. It was also conceded that the residential development advocated by the objectors for the project area would create even more vehicular traffic on Route 71 than would the project. In addition, no statistical evidence was cited for the proposition that gravel trucks are inherently more dangerous than other traffic. It was agreed that the creation of the berm and landscaping by Hamman on the project site would tend to alleviate the problems of unsightliness and noise. It was also conceded that the gravel operations at which there were law enforcement problems were those that had been abandoned and not reclaimed.

This is an action for declaratory judgment as to the validity of the application of the Kendall County Zoning Ordinance to the plaintiffs' petition for special use and not as to the validity of the Kendall County Zoning Ordinance itself. The reasonableness of the zoning ordinance

itself is not a matter in issue before this court. At the conclusion of the presentation of evidence at trial the court observed:

"* * * but it isn't for me to decide whether my judgment is the same as the Zoning Board of Appeals, but merely to see if what they did was based upon the evidence."

This statement, when read in conjunction with the final order of the trial court, is essentially correct.

■■■ In the case of *Frelk v. County of Kendall* (1976), 44 Ill. App. 3d 253, 357 N.E.2d 1325, this court reviewed essentially identical issues of fact and law. We reaffirm our holdings therein. Here, as in *Frelk*, the sole standard to be applied is whether the plaintiff proved by clear and convincing evidence that the denial of the special use permit was arbitrary, capricious and unreasonable in that it bore no *real* or *substantial* relationship to the public health, safety, morals or general welfare. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454; *Frelk v. County of Kendall; La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 325 N.E.2d 105.) Neither undue hardship to the plaintiff nor a public necessity for the special use need be shown by the plaintiff in order to meet his burden in a special use permit case. (See *Frelk v. County of Kendall; Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 450, 154 N.E.2d 323, 325.) In addition, each case of this kind must stand upon its own facts and circumstances. (*Elmhurst-Chicago Stone Co. v. County of Kane* (1970), 129 Ill. App. 2d 190, 262 N.E.2d 612.) In that regard we note here, as we did in *Frelk*, that we are not concerned with whether the plaintiffs will be allowed to use their surface property in a certain way. Rather, the basic question before this court is whether the plaintiffs will be allowed to use their sub-surface mineral property in any manner whatsoever. In *Frelk* we cited *Midland Electric Coal Corp. v. County of Knox* (1953), 1 Ill. 2d 200, 215-16, 115 N.E.2d 275, 283-84, where the supreme court said, in pertinent part:

"It will be observed that the conflict in those cases usually involved a prohibition against a property owner using his property for a filling station, apartment building, industrial or commercial enterprise. He could, however, use his property for specified 'permissive uses.' Such is not so in the present case. Zoning that prevents mining has the effect of prohibiting any use at all of mineral property. Authorization to use the surface for farming purposes provides no use for the mineral property beneath it. * * * The instant resolution does not regulate the use of the property but denies its use without compensation. * * * if the public is interested in the plaintiff not mining its coal, the public and not the corporation should bear the cost of such restrictive measure." (44 Ill. App. 3d 253, 258, 357 N.E.2d 1325, 1329.)

While this factor is not strictly controlling in our present situation, we do feel that the facts and circumstances in such a case should be strictly and carefully reviewed.

■■■ After a complete and careful review of the entire record we note here that the overwhelming majority of the evidence presented by both sides was opinion rather than factual in nature. We also find that there was conflicting evidence as to practically every facet of this case. As our supreme court observed in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 70:

> "There is naturally a conflict of testimony in cases of this nature and the credibility of witnesses is of great importance. The triers of fact are in a superior position to that of a reviewing court in such a situation. When testimony is contradictory in a trial without a jury the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence."

In the instant case the trial court was clearly in a superior position to observe and judge the credibility of the witnesses and weigh their conflicting testimony. The trial court clearly gave greater weight to Hamman and his witnesses and declared that the denial of the special use permit was unreasonable, arbitrary, confiscatory, unconstitutional and void. Although it is not specifically stated, it is clear that the trial court found that the denial of the special use permit bore no real or substantial relationship to the public health, safety, morals or general welfare. We reject defendants' contention that the legislative body must only show *some* relationship between the denial of the special use and proper objects of the police power. The mere raising of unsubstantiated conjecture does not make a denial of a special use a legislative act which is "fairly debatable" and therefore armored with the presumption of legislative validity. We hold that the plaintiffs have met their burden of proof in showing that the denial of the special use permit was unreasonable and arbitrary. Under the facts present we will not substitute our judgment for that of the trial court.

■■ Finally, we turn to the issue of whether the order entered by the trial court will effectuate the clear intent of that court to order the granting of the special use permit as restricted by the plans of development and reclamation presented by the plaintiffs. This issue has not been raised or argued by the parties but we feel it necessary for the proper determination of this case. We have examined the order of the trial court and hold that it is ambiguous as the referral of the plans of development and reclamation to the county authorities would serve no useful purpose and lead to additional litigation. The order should clearly set forth that the plaintiffs are to develop and reclaim the project site in accordance with

the plans submitted and the testimony given by them. In addition, the order should state that the trial court specifically retains jurisdiction of this case for the purpose of enforcing compliance by the plaintiffs with the plans and operating methods which they themselves have proposed for the use on the project site.

For the reasons stated above we affirm the granting of the special use permit to the plaintiffs but remand the cause to the Circuit Court of Kendall County for the sole purpose of amending the judgment order in this cause in a manner consistent with this opinion.

Affirmed and remanded with instructions.

BOYLE and WOODWARD, JJ., concur.