Victor E. Schiffer and Donna E. Schiffer, His Wife, Mattie D. Tighe, and Texaco, Inc., a Corporation, Plaintiffs-Appellees, v. The Village of Wilmette, a Body Politic and Corporate, Defendant-Appellant.

**Gen. No. 52,872.**

First District, First Division.
January 13, 1969.

Robert J. Mangler, Corporation Counsel, of Wilmette, for appellant.

Melvin A. Weinstein, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant Village appeals from a declaratory judgment order, which found that the provisions of the Wilmette Zoning Ordinance (as amended) constituted an "unconstitutional deprivation of the plaintiffs' property." The Village was ordered to issue necessary permits for the construction of a gasoline station subject to all of the applicable Village ordinances.

On appeal, the Village contends:

1. Defendant was not afforded a fair and impartial hearing in that the trial court at the opening of the trial stated that the case had been decided.

2. The plaintiffs failed to overcome the presumption of validity attaching to the zoning ordinance of the Village of Wilmette.

3. The increase in value if used for gas station purposes does not render the ordinance invalid.

4. Based on the evidence in the record there was room for a fair difference of opinion on the reasonableness of the restriction placed on the plaintiffs' property by the ordinance and it should have therefore been upheld.

5. The lack of community need is highly relevant in the refusal to zone the property to permit another gasoline service station.

6. Dangers created by traffic moving in and out of the proposed gasoline service station is a reasonable basis for the exercise of the defendant's police power in zoning the subject property for R–3 use.

The subject property consists of two parcels, which have a total frontage of 259.04 feet on Lake Avenue in the Village of Wilmette, commencing at the southeast corner of the intersection of Lake Avenue and Lavergne

Avenue. Parcel No. 1 is owned by the plaintiffs, Victor E. Schiffer and his wife. It has a front footage of 113.04 feet on Lake Avenue and approximately 126 feet on Lavergne Avenue, and its easterly edge abuts upon parcel No. 2. Parcel No. 1 is rectangular and contains in excess of 14,000 square feet. It is presently improved with a 1½-story brick residence and attached garage, facing Lake Avenue.

Parcel No. 2, the westerly boundary of which is common to Parcel No. 1, has a frontage of 146 feet on Lake Avenue and a depth of 247 feet. This parcel is owned by the plaintiff, Mattie D. Tighe. It contains in excess of 36,000 square feet and at present it is vacant and unimproved.

The third plaintiff is Texaco Oil Company, which has an option to purchase Parcel No. 1 for $67,500 and Parcel No. 2 for $60,000, on the condition that the property be zoned for service station use. The options were entered into in November of 1964 and terminate in November of 1969.

The block in which the subject property is located is classified in the R–3 Group House District in the zoning ordinance of the Village. The R–3 District, as originally adopted in the 1959 zoning ordinance, includes all the frontage on the south side of Lake Avenue from Lavergne, east past Skokie Boulevard to Hibbard Road, and to a depth of some 247 feet south of Lake Avenue. East of Skokie Boulevard the R–3 District runs south to Washington Avenue and includes a triangular piece of property bounded by Skokie Boulevard, Lake Avenue and Hibbard Road.

The east end of the subject block on Lake Avenue is the southwest corner of the intersection of Skokie Boulevard and Lake Avenue. This corner is occupied by a "Marathon" gasoline station, which is about 500 feet east from the intersection of Lake and Lavergne Avenues. This gasoline station was installed in 1963 pursuant to a decree

of the Circuit Court, which was affirmed in Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill2d 116, 188 NE 2d 33 (1963).

The southeast corner of the intersection of Skokie Boulevard and Lake Avenue is occupied by a Standard Oil service station installed in 1966 pursuant to a decree of the Circuit Court, affirmed by this court in Chicago Title & Trust Co. v. Village of Wilmette, 66 Ill App2d 326, 214 NE2d 336 (1966).

Lake Avenue is a four-lane primary thoroughfare with traffic structures in the center. Skokie Boulevard, which intersects with Lake Avenue about one-half block east from the subject property, is also a four-lane primary thoroughfare. The balance of the block between the subject property and the Marathon gasoline station at the southwest corner of the intersection consists of another vacant parcel and a single-family dwelling. The balance of the block east of the Standard station on Lake Avenue and Skokie is developed with townhouse residential construction.

To the south of the subject property for several blocks the area is developed with single-family dwellings ranging in value from $30,000 to $50,000. To the north of the subject property on the north side of Lake Avenue is a planned retail shopping development known as the Edens Plaza Shopping Center, and that property is zoned B–1, Planned Retail Shopping District. The Edens Plaza Center occupies a 20-acre tract and was constructed in 1955.

West of the subject property on Lake Avenue, and within one-half mile, are four more gasoline service stations. About one block west of the subject property is Edens Highway, which has an exit ramp for eastbound Lake Avenue traffic, which passes in front of the subject property. Immediately to the west of the subject property and slightly south is a single-family residential area.

Mr. Schiffer, owner of Parcel No. 1, testified for the plaintiffs that he had purchased the property in July 1964

for $30,000 and was living with his family in a single-family dwelling on the site. He did not have any appraisal made. The owner of Parcel No. 2, Mrs. Tiche, did not testify. Two representatives of the Texaco Company testified for the plaintiffs that they considered the subject property a good location for the installation of a service station in spite of the fact that there were other stations in the immediate area. One of these witnesses, Mr. Knight, testified that they proposed to develop the corner parcel and part of Parcel No. 2 but had no current plans for the use of the east 75 feet of Parcel No. 2.

Plaintiffs' planning expert, William S. Lawrence, testified that his opinion was that a service station would be compatible with surrounding properties and that it would not have an adverse effect on adjoining properties. He thought that it would be the highest and best use of the subject property. He believed that this property takes its character from the other commercial uses on both sides of Lake Avenue. The fact that residential uses to the south of the property have been established backing up upon this property, and screened from the subject property, indicated to him that there would be a transition and that the rear property line would be a reasonable point of transition between zoning districts. His opinion was that traffic patterns would make a reasonably safe entrance and exit to the subject property. It was also his opinion that the value of the two subject parcels for the present R–3 zoning was $45,000 to $50,000.

Plaintiffs' real estate expert, Mr. McNamara, testified that his opinion of the value of the property for the existing zoning purposes was $67,500 and that the value of the property for the gasoline station would be $150,000. He stated that the use of the subject property as a gasoline station would have no effect on the value of the homes located behind it because the effect has already been established by virtue of the B–3 use at the intersection.

Defendant's witnesses included John F. Scapin, its Director of Planning, Zoning and Building, who testified that in his opinion the R–3 zoning was the highest and best use of the subject property and that this was based on the fact that this property was part of an area of study of a comprehensive plan. The R–3 classification for the south side of Lake Avenue was meant to be a transition and buffer zone between the single-family use to the south and the Edens Plaza commercial use to the north. Defendant's traffic engineer and former chief of police, Mr. E. F. Whiteside, testified as to the traffic conditions in the area, including a traffic count and the number of school buses using both Lavergne and Lake Avenues. This witness also testified to the accident history of the intersection of Lavergne and Lake Avenues. It was his opinion that the installation of a gasoline station at this intersection would increase the congestion and chance of accident. Defendant's planning expert, Mr. George Kranenberg, was also of the opinion that the highest and best use of the premises was for R–3 group or townhouses. In his opinion, the uses which directly relate to the subject property are group houses to the south and west and the single-family homes to the south. The business uses at the corner of Skokie Boulevard and Lake Avenue refer to that intersection and are directed to it. He also stated that Lake Avenue is not completely a business street. There are some business and commercial uses west of Edens Expressway, but to the east of the Expressway the only business uses are those which are at the intersection of Skokie and Lake Avenue, and to the east of that the use is all residential. To the north, the Edens Plaza is a commercial use separated from the subject property by a four-lane divided highway, and it was his opinion that this was a buffer zone between the shopping district to the north and the subject property.

The defendant's real estate expert, Mr. Buckmaster, testified that in his opinion the present value of the two

parcels with R–3 zoning was $93,500, the value of the improved parcel (No. 1) was $33,500, and the value of the vacant parcel (No. 2) was $60,000. It was his opinion that the use of the subject property as a gasoline service station would have a detrimental effect on the adjacent single-family homes.

A defendant's witness, a neighbor to the south, testified that a gasoline station use would seriously undermine the value of his property and create an additional danger to children, particularly on Lavergne Avenue.

■ Initially, in the consideration of defendant's contentions, we find no merit in the charge that it was not afforded a fair and impartial hearing. This charge is based upon remarks made by the trial judge at the opening of the trial. The judge questioned the need for a trial because "there is a complete review of this property in the law report from the Appellate and Supreme Court." The trial then proceeded, and the record shows that both sides were given a full hearing.

As to defendant's contention that the plaintiffs failed to overcome the presumption of the validity in favor of the ordinance, the Village argues that all that was shown was a difference of opinion between plaintiffs' experts and its own experts as to the value of the property under different zoning classifications, and there is no showing of hardship on the plaintiffs or evidence that the present owners had attempted to sell the property for use under the present ordinance. On this point defendant's authorities include Gregory v. City of Wheaton, 23 Ill2d 402, 406, 178 NE2d 358 (1961):

> "To sustain this burden it is not enough to show that the restriction works a hardship on him, or that the desired use would not substantially impair the public health, safety, or welfare."

Defendant Village also states that the dangers which will be created by traffic moving in and out of the pro-

posed gasoline station is a reasonable basis for the exercise of defendant's police power, and that it was the expert opinion of its traffic engineer "that the installation of the gasoline service station at this location would increase the traffic hazard and increase the accident volume. Thus, the defendant offered specific evidence as to why it has exercised its police power and restricted commercial development in the area of the subject property."

Plaintiffs argue that the paramount factor to be used here is the use and zoning of nearby properties, and "it is readily apparent from the character and near universal development and utilization of Lake Avenue for business and commercial purposes, that the present residential classification of the subject property is invalid," and that "with the exception of the subject property and one single family dwelling, the entire area fronting on Lake Avenue, from Edens Highway to the eastern corners of Lake and Skokie, is devoted entirely to business and commercial uses. It is difficult to understand the defendant's efforts to impose a residential classification on the subject property in view of the nearly exclusive business and commercial development of the area."

In considering defendant's contentions on appeal, we believe the guidelines to be applied here are set forth in the "Marathon" case, 27 Ill2d 116, 123, 188 NE 2d 33 (1963):

> "The rules governing the validity of zoning ordinances are familiar and undisputed. For a particular classification to be upheld it must bear a reasonable relation to the public health, safety, comfort, morals or welfare, and one who challenges its validity has the burden of proving it to be arbitrary and unreasonable. (Gregory v. City of Wheaton, 23 Ill 2d 402.) And although a zoning ordinance may be valid in its general aspects, yet in some circumstances

88

involving a particular piece of property it may be so clearly arbitrary and unreasonable as to result in confiscation in violation of the constitutional rights of the owner. (Petropoulos v. City of Chicago, 5 Ill 2d 270.) In determining whether or not a zoning ordinance is arbitrary, unreasonable or capricious in its application to a given parcel of land, among the factors to be taken into consideration are the character of the neighborhood, existing uses and zoning of nearby property, the amount by which property values are decreased, the extent to which the diminution in value promotes the public health, safety, morals or welfare, the relative gain to the public as compared with the hardship imposed upon the individual property owner, the suitability of the subject property for the purpose for which it is zoned, and the length of time the property has remained unimproved, considered in the context of the land development in the area. (Myers v. City of Elmhurst, 12 Ill2d 537.) No single factor is controlling but each must receive due consideration, and the fact that there may be a difference of opinion among expert witnesses as to the scope and impact of the various factors does not require a finding that the reasonableness of the ordinance is debatable. (Hartung v. Village of Skokie, 22 Ill2d 485.) And though there is a presumption of validity in favor of zoning ordinances, where it is clearly and affirmatively shown that a particular ordinance is unreasonable and confiscating in its application, we will not hesitate to declare it unconstitutional. Northern Trust Co. v. City of Chicago, 4 Ill2d 432."

■ As previously noted, the "Marathon" gasoline station is at the southwest corner of Skokie and Lake, the east end of the subject block on Lake Avenue, and we think the instant case comes within the pronouncements

made in "Marathon," 27 Ill2d 116, 124, 188 NE2d 33 (1963):

> "Applying the accepted tests to the testimony and exhibits in the record, it is plainly apparent that plaintiff's property has little suitability or value for the purpose for which it is zoned. The tremendous volume of traffic at the intersection and the extensive commercial uses at two of its corners are factors which in themselves do much to cause the property to be unfit and undesirable for residence purposes and demonstrate the unreasonableness of the classification. . . . We have consistently held that zoning ordinances restricting an area to residential use are void as applied to property within the area which is so situated in relation to a commercial zone as to render it peculiarly unattractive and of little value for residential use."

Applying the foregoing tests here, we believe the evidence of plaintiffs overcame the presumption of validity that attached to the ordinance. The difference of opinion on the reasonableness of the restriction, the lack of community need, the immediate traffic conditions, and the lack of evidence as to the proposed use of the balance of the land by Texaco, examined singly or collectively, are not determinative factors here.

We think it is apparent that plaintiffs' property has little suitability or value for the purpose for which it is zoned. The volume of traffic on Lake Avenue and the nearby extensive commercial uses are factors which, in themselves, do much to cause the instant property to be unfit and undesirable for residence purposes. These factors demonstrate the unreasonableness of the classification and have placed the subject property in a position such that it takes its character from Lake Avenue and from commercial uses in the vicinity, including the Marathon station at the east end of the block.

Considering the entire record, and for the reasons stated, we conclude that defendant's ordinance is unconstitutional and void as applied to plaintiffs' property, and the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.