Elmhurst-Chicago Stone Co., a Foreign Corporation, Plaintiff-Appellee, v. The County of Kane, a Municipal Corporation of the State of Illinois, Defendant-Appellant, and Genevieve Seraphin, et al., Intervenors-Defendants-Appellants.

Gen. No. 69–156.

Second District.

September 23, 1970.

William R. Ketcham, State's Attorney of Kane County, of Elgin, Benn E. G. Eilert, Assistant State's Attorney, of Geneva, and Smith and McCracken, of Geneva, for appellants.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The defendant County and defendant property owners, as intervenors, appeal from the granting of a judgment which declared that plaintiff may use its property for the mining of gravel, sand and stone, including the erection, installation and use of necessary structures and equipment in that connection. The court found that the re-

fusal of the County to issue a special permit for the use sought, and the pertinent zoning ordinance as applied to plaintiff's property, were invalid. The County was also ordered to issue the special-use permit.

Defendants attack the judgment order on the basis that it is not sustained by the manifest weight of the evidence. Plaintiff urges the sufficiency of the evidence to support the judgment, and additionally argues that the denial of the special-use permit was an unconstitutional deprivation of plaintiff's rights which the court properly recognized in ordering the issuance of the permit.

The Elmhurst-Chicago Stone Co. purchased approximately 400 acres of land in Kaneville Township in southwestern Kane County in the years 1963 and 1964. The original contract to purchase the property was contingent upon the owners being able to obtain a special-use permit from the County of Kane so that the purchasers could mine sand and gravel on the premises. This application was denied by the Zoning Board of Appeals of Kane County and by the Board of Supervisors of the County. Subsequently, the plaintiff company purchased the property, zoned in the "F–Farming" classification, paying $600 per acre for one parcel and $700 per acre for a second.

The property is located on both sides of the concrete county road, known as Main Street Road, which lies in a direct easterly-westerly direction, with Kaneville, Illinois, an unincorporated village on the west, and Batavia, Illinois, on the east. Main Street Road is the only road leading in an easterly direction from Kaneville, about two miles, to Illinois State Route 47, and Route 47 runs northerly-southerly seven to ten miles west of the main cities in the county, namely, Batavia, Geneva, St. Charles, Aurora and Elgin.

On January 21, 1966, the Company filed a petition with the County for a special-use permit under the "F–

Farming" zoning classification to mine sand and gravel on the entire tract. The Zoning Board of Appeals recommended denial of the request and the County Board of Supervisors accepted the recommendation and denied the request for the special-use permit. This Declaratory Judgment suit followed.

Kaneville Township is a rural township. The soil on the subject property is characterized as upland prairie soil with a base of sand and gravel.

Plaintiff's position that the court properly ordered the issuance of the special-use permit, must first be considered. Plaintiff suggests in its brief that "the instant case is not one of a question of classification. The subject property is in a zoning classification which permits gravel mining"; that the county's right to exercise the special-use technique must be carefully circumscribed, and that in the absence of standards in the ordinance, the ad hoc determination by the legislative body presents an issue of "spot zoning."

To resolve the issues in this case, a review of the direction taken in the cases in Illinois which have considered the special-use technique in terms of judicial review is in order.

Kotrich v. The County of DuPage, 19 Ill2d 181, 166 NE2d 601 (1960) involved the validity of a special use (a private country club in a single-family residential area) and such provisions were upheld. The court noted that the technique is a method for encompassing infrequent types of land use, potentially incompatible with uses usually allowed within customary categories, which may be desirable in a given case. The court stated, on page 185:

> "It is true that the procedural restrictions prescribed for amendments and variations, as well as the standards prescribed for variations, evidence a legislative plan to guarantee property owners some

protection from piecemeal changes in the general zoning scheme by ad hoc determinations with respect to particular pieces of property. And since granting a special use permit involves an ad hoc judgment which may affect surrounding property owners in the same way as a variation or an amendment, unlimited application of the special use technique to land uses that can readily be accommodated within the customary categories would undermine the protection contemplated by the statute. But unlimited application of the special use technique is not required to meet the problem it was designed to solve. Only those infrequent uses which are beneficial, but potentially inconsistent with normal uses in the various zones, need be included."

In Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 (1961), the special-use technique was further defined. The trial court declaratory judgment was upheld. The decree declared the village zoning ordinance unconstitutional, as applied to the proposed motel in a commercial area, and directed that the property owner had the right to use the property for the requested purpose. The court stated, at page 498:

". . . our approval of the special use technique does not mean that a determination to permit or to deny a special use is beyond judicial review.

"Where, as here, the application for a special use has been rejected, plaintiffs have the right to challenge the constitutionality of the underlying zoning classification."

This principle was followed in Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529 (1962).

The application of basic rules governing the underlying zoning was also the approach taken in Camboni's, Inc. v. DuPage County, 26 Ill2d 427, 187 NE2d 212 (1962), to

affirm the action of the zoning board in its denial of a permit for a trailer park in a commercial district in which the ordinance permitted such use only as a special use.

■ In Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797 (1964), the Supreme Court upheld the judgment of the trial court which had declared invalid the denial of a special use permit to build a hospital in a particular area. The court noted that although hospitals were provided for only as special uses in a separate provision of the Northbrook Zoning Ordinance, rather than being categorized in any zoning classification, (pages 151–152)

> "Nevertheless, the denial of a special-use permit must bear a 'real and substantial relation to the public health, safety, morals or general welfare.' (Columbus Park Cong. v. Board of Appeals of Chicago, 25 Ill2d 65, 71.)"

See also Pioneer Trust & Savings Bank v. McHenry County, 41 Ill2d 77, 241 NE2d 454 (1968).

It is to be noted that in the Kotrich, Ward, Camboni and Lazarus cases there were specially concurring or dissenting opinions which urged that the special-use technique was invalid in the absence of an ordinance which set forth facts and conditions, i. e., standards for the granting or refusal of a special-use permit. (In addition, these opinions also challenged the enabling power to enact special-use ordinances, which challenge now appears to have been settled and has not been urged here.)

■ From an analysis of the above authorities, we conclude that no particular standards in the exercise of its powers by the legislative body (as here) are required to validate a special-use ordinance. As explained in Kotrich v. The County of DuPage, 19 Ill2d 181, 187, 166 NE 2d 601 it is contemplated that the legislative body will "weigh the desirability of the proposed use against its

potential adverse impact," and that with reference to the action of a legislative body "precise standards to govern its determination are not required."

■ Whether the ordinance includes a special type of use as contemplated in a particular zoning classification or sets up a special category for such use does not appear to be a material factor. (Cf. Kotrich, supra, and Lazarus, supra.)

In this view, the intended purpose of the argument stated in plaintiff's brief is not entirely clear:

> "The Plaintiff has not sought a change of classification. The property is in the right category—F– District Farming. One of the recognized uses in that category, of which the Plaintiff was aware when he purchased the property, was the right to mine gravel, subject to the issuance of a special use permit. The Plaintiff had the right to expect that a permit would not be unreasonably or unlawfully withheld. If that has been done, the Plaintiff should not be estopped from seeking judicial relief."

■ In a declaratory judgment proceeding of this nature, as opposed to administrative review, plaintiff may not purely seek judicial review from an adverse legislative determination which denies a special use permit, without directly attacking the constitutionality of the underlying zoning classification as applied to his property. See Klein v. Village of LaGrange, 93 Ill App2d 318, 325, 236 NE2d 351 (1968). Judicial review of the denial of the special use permit is available in this action only by a challenge to the constitutionality of the underlying zoning classification. Hartung v. Village of Skokie, 22 Ill2d 485, 498, 177 NE2d 328; Pioneer Trust & Savings Bank v. McHenry County, supra, at page 84.

■ However, from a review of the pleadings and the evidence, we believe that the plaintiff has essentially challenged the underlying zoning. We, therefore, ap-

197

proach the record from this standpoint and apply the traditional tests which govern review of zoning ordinances. These have been often stated. See Pioneer Trust & Savings Bank v. McHenry County, supra, at page 85; Hedrich v. Kane County, 117 Ill App2d 169, 174, 253 NE2d 566 (1969); Whittingham v. Village of Downers Grove, 101 Ill App2d 166, 172, 173, 242 NE2d 460 (1968); Schiffer v. Village of Wilmette, 105 Ill App2d 80, 245 NE2d 143 (1969).

The evidence as to the character of the surrounding neighborhood included testimony on behalf of the plaintiff that there were at least five gravel pits in the vicinity of the subject property. Most of them were small operations. They have been operating for many years (with the exception of the Kane County pit), and are in various stages of depletion. There has been no attempt at reclamation of the land upon which these pits are located after mining. They are in a hilly area rather than flat, as is the subject property.

The general area is characterized as agriculture with F–Farming zoning classification. There are a few scattered residences or farm homes over a few miles to the east. Gravel mining and farm operations are to the north and south. To the west a distance of a quarter of a mile is the easterly limits of the unincorporated village of Kaneville with a population of 250–300 people.

Of the intervenors who testified, the distance from their residences to the nearest point of the subject property were:

| | |
|---|---|
| Robert Landis | ⅕ of a mile |
| John Bjornson | 1300 feet to the east |
| John Steven | ⅜ of a mile |
| Robert Temple | ¾ of a mile |

No one lived any closer.

There is little industry in the area, but the defendants' witness, James P. McMahon, an industrial realtor for 21

198

years, said that the next jumping step for industry in the Chicago area will be the Fox River Valley. He testified that the lake or lakes created would increase the value of the surrounding property for industrial use and provide good recreational facilities.

Charles Hammersmith, an officer of the plaintiff corporation, testified that no dynamite or blasting would be employed as it is never needed in the mining of sand and gravel—only in limestone quarries.

Robert Hammersmith, Secretary and Treasurer of the company, testified that he was in charge of operation, and that, if granted the special use, they would follow the new and modern "placer" method of mining. He said in that operation the top soil is stripped off and the sand and gravel dug out, and lakes are created. The top soil is then replaced, leveled off and used for farming. He estimated that within six months to a year the land that has been mined would be returned to farming. The defendants' expert witness told the trial judge that this type of mining was an improvement over the method used in the surrounding operations. The plaintiff introduced into evidence photographs showing the reclamation to farming land following the employment of the new placer method of mining.

There was a difference of opinion as to the extent, if any, to which the value of the surrounding properties would be diminished by the proposed use. The defendants' witness, a real estate appraiser, testified that there could be a depreciation to the residences to the east of the subject property lying along Main Street Road and Merrill because of the proposed mining operation of from 10% to 20%. He qualified these percentages as being dependent upon the number of trucks that would be brought to the area, and whether there would be any dirt, dust or noise in the area.

As to the property to the west, he felt that the percentages subject to the same possibilities, would be

about one-half, and he saw very little disturbance, if any, to the area to the north and south.

The only testimony about dust, or noise, in a mining operation, such as is contemplated here, was from the Superintendent of the plaintiff's Warrenville plant. He said one person had complained of dust from trucks, and that this was corrected by oiling the road. He testified that he has never had a complaint about noise. The defendants did not refute this testimony, even though they had the plant under surveillance by two intervenors for more than nine consecutive hours on a busy business day. These witnesses testified but did not mention dust or noise.

The defendants' witness also testified that the proposed method of mining was a decided improvement over the method employed at the Michels and Larson pits.

Lyle Lawson, Chairman of the Kane County Planning and Zoning Committee of the Board of Supervisors since 1949, and the owner of 200 acres of land in the immediate area, told the court that gravel pits—five of which he can see from his own farm home, have not hindered the increase in value of his land. He felt that there would be a definite trend and population growth away from Du Page County and Chicago to this area, both residential and industrial.

As to the value of this operation to the plaintiff, there is no dispute but that it would be highly profitable.

It is the plaintiff's position that early reclamation of mined out areas and its return to agriculture or other permitted uses is assured in the dictate of economy. In addition, such reclamation is required by chapter 93, par 180.1, Ill Rev Stats 1969, "The Surface-Mined Land Reclamation Act."

 Just as no one of the factors involved controls the right or wrong of zoning, neither do the various personal interests determine the result. Serious consideration must be given the public generally. The plaintiff

200

contends that there is a great shortage of sand and gravel in northern Illinois, including this area. It is agreed that there is no substitute for sand and gravel in the making of concrete—an integral and necessary part of most all construction. Unlike crops in the field, these minerals do not replace themselves.

Testimony from both plaintiff and defendants relate to this point. The testimony is predominantly that there is either now, or will be in the future, need to have this sand and gravel removed for construction needs of the public. Defendants' witness, Leon Larson, who is in the sand and gravel business, told the court that it would be bad planning for the community to allow an area with substantial deposits of sand and gravel to be permitted to be used for a subdivision or for industrial use, and make the sand and gravel inaccessible.

 While these tests are as applicable here as they are to any rezoning issue, each case stands on its own facts and circumstances. An important uniqueness is found in this case that is rarely present in others. Generally, the denial of a reclassification of an area to permit a commercial or other type of operation to be established on the premises does not prevent the same activity at another location in the vicinity. Here, this is not so. It is undisputed that this land contains an abundance of valuable sand and gravel. If its removal is denied, then the aggregate will be lost to both the owner and the public. This uniqueness must be considered in applying the established factors in determining if the ordinance is so clearly arbitrary and unreasonable as to result in confiscation in violation of constitutional rights of the owner.

Thornton K. Ware, the County Planner, gave his opinion that it would be wrong to permit urban growth around this area until the sand and gravel was removed. It was argued by the plaintiff that if, as claimed by the defendants, the present few residences in the immediate area

of the subject property would be disturbed by the proposed operation, it is better to do it now than later when the area is more densely populated.

As to many factors, the testimony on both sides was the same, while in some there was a difference of opinion. The fact that experts may differ in their view does not require a finding that the ordinance is debatable. Schiffer v. Village of Wilmette, supra, and Hartung v. Village of Skokie, supra.

The trial judge in his memorandum opinion found that there is now and will be a great need for mineral aggregates, and that the loss of the sand and gravel on the subject property would be detrimental to the common good of the entire area, and that it was the opinion of the county's own zoning expert that a special use should have been granted here. The trial judge heard and saw the witnesses testify, and concluded that the plaintiff had sustained its burden of proving the Board's action in denying the special use permit to have been arbitrary and unreasonable.

In the light of all of the factors to be considered and the interest of the public generally, we are of the opinion that the action of the Board on the petition was arbitrary and unreasonable and that the plaintiff has sustained its burden.

We affirm the trial court's decision. The ordinance as applied to the proposed use of the subject property is unconstitutional and the court properly ordered the issuance of a special use permit.

Subsequent to oral argument, plaintiff filed a motion for leave to amend the record or in the alternative to remand the cause to the trial court for amendment of the record. Attached to the motion was a certified copy of minutes of the Kane County Zoning Board of Appeals disclosing the granting of a special use permit to Feltes Sand and Gravel Company on May 12, 1970, for an operation substantially similar to plaintiff's proposed use in

202

this case on a similarly large tract of land in reasonably close proximity to the area here involved. We have taken the motion and objections thereto with the case. In view of the opinion we have reached, we deny the motion without ruling upon its merits.

Affirmed.

ABRAHAMSON and MORAN, JJ., concur.