John C. STERNAMAN, Plaintiff,

v.

COUNTY OF McHENRY, Defendant.

No. 77 C 1928.

United States District Court,
N. D. Illinois, E. D.

June 30, 1978.

William L. Niro, Gerald D. Hosier, of Hosier, Niro & Daleiden, Ltd., Chicago, Ill., for plaintiff.

William J. Cowlin, State's Atty. of McHenry County, Woodstock, Ill., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

McGARR, District Judge.

The court, having heard the testimony of the witnesses for the parties in open court, having considered the documentary evidence and briefs of the parties, and otherwise being fully advised in the premises, hereby enters the following findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P. and enters judgment thereon pursuant to Rule 58, Fed.R.Civ.P.

### I. The Parties, Jurisdiction and Venue

1. The plaintiff, John C. Sternaman (hereinafter, "Sternaman"), is an individual residing in this judicial district and division. Sternaman as a lessee is now and since the spring of 1972 has been in rightful possession of approximately sixty acres of land (hereinafter, "the Sternaman land") located in a rural, unincorporated area of Nunda Township, McHenry County, Illinois, the legal description of which is correctly set out in the complaint (PX 1, para. 1, 4; I–7).

2. The defendant, the County of McHenry (hereinafter, "the county"), is an Illinois county organized and existing as an Illinois corporation under S.H.A. Ch. 34, § 301 (PX 1, para. 2) and is physically located in this district and division. Like many counties in this state and elsewhere, the county has enacted a zoning ordinance regulating land use within the county (PX 3).

3. The present suit arises out of a controversy between the parties respecting the county's application of particular provisions of its zoning ordinance to Sternaman's business operations on said land. Specifically, in August, 1976, the county issued a final refusal to renew a ten-year conditional use permit (CUP) issued on September 14, 1965; the original permit had authorized certain on-site processing of sand and gravel mined on said land by Sternaman as of right. Sternaman was thereafter charged in quasi-criminal proceedings initiated by the county with multiple violations of its zoning ordinances (I–6–18; PX 3). Proceedings on

these alleged violations are pending before the Illinois Circuit Court of the 19th Judicial District, McHenry County, i. e., *County of McHenry v. John C. Sternaman, d/b/a Illinois Mining Company,* Nos. 76–CM–2502 and 76–CM–2615 (DX 8 and 9).

4. The multicount complaint[1] (PX 1) herein alleges that, under the facts of this case, the county's refusal to renew the conditional use permit denies to Sternaman certain fundamental rights to which he is entitled under the Constitution of the United States, particularly the Fifth and Fourteenth Amendments. The county contends that the Sternaman complaint (PX 1) fails to state a claim upon which relief may be granted. The court disagrees; the court finds that the complaint properly states claims for a denial of "due process" (Count I), a denial of "equal protection" (Count II), and unconstitutional application of the ordinance provisions at issue (Count III). The claim of Count IV, alleging an "unlawful taking" without just compensation, finds no support in the evidence and is dismissed. A fifth count, alleging that the applicable provisions of the county's ordinance are preempted by the Illinois Environmental Protection Act, was not considered on its merits by the court and was voluntarily withdrawn from contention, since the issues of that count are now pending between the same parties before the Illinois Appellate Court in an interlocutory appeal filed by Sternaman in the aforesaid criminal action.

5. The county, on November 21, 1977, the final date then scheduled for the hearing of evidence in the subject cause, filed a motion to dismiss this cause on the grounds that this court lacked subject matter jurisdiction and that it should in any event abstain from the exercise of jurisdiction, even if it found such to exist. The court on hearing the arguments of the parties denied the motion on November 21, 1977 without prejudice to the renewal of the motion at the close of the trial. The court has considered the renewed motion of the county

and, except as to Count IV, again rejects the county's contentions. The court finds that it has jurisdiction under 28 U.S.C. §§ 1331, 2201 and 2202, in that the present action presents a genuine case or controversy arising under the Constitution and laws of the United States and that the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs. The court finds that jurisdiction does not exist in this court under 28 U.S.C. § 1343 or 42 U.S.C. § 1983. The court rejects the county's invitation to dismiss this cause under the doctrine of abstention, the court finding that the facts warranted the exercise of jurisdiction by this court.

## II. The Applicable Legal Standards

6. In hearing the conflicting evidence of the parties, the court was not unmindful of certain guiding principles, specifically, a zoning ordinance is presumed valid (*Galt v. County of Cook*, 405 Ill. 396, 91 N.E.2d 395), this presumption may only be overcome by clear and convincing evidence (*Midland Electric Coal Corp. v. County of Knox*, 1 Ill.2d 200, 115 N.E.2d 275), and the burden of proof is on the plaintiff (*Krom v. City of Elmhurst*, 8 Ill.2d 104, 133 N.E.2d 1). It is likewise well established that it is primarily the province of the municipal body to determine the use and purpose to which property within its boundaries may be devoted, and it is neither the province nor the duty of a federal court to interfere with the discretion with which such bodies are vested, unless the legislative action of the municipality is shown to significantly invade the United States constitutional rights of the complaining party. *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46, 145 N.E.2d 65 (1957).

7. The above zoning ordinance principles are applicable with undiminished force to "special" or "conditional" uses, such as are involved in this case. The local zoning authorities are vested with broad powers in determining the suitability of a given

---

1. An amended complaint correcting an omission to allege the requisite jurisdictional amount under 28 U.S.C. § 1331(a) was filed of right on June 13, 1977. For simplicity the complaint and the amended complaint are collectively identified as "the complaint".

site for a proposed special or conditional use. But for this reason, the avenues of judicial review must be at least as readily available to the party who seeks to establish a special or conditional use as they are in the normal zoning case where courts have historically stood ready to determine whether the exercise of zoning power "involves an invasion of private rights without reasonable relation to the public welfare". *Pioneer Trust & Savings Bank v. County of McHenry*, 41 Ill.2d 77, 241 N.E.2d 454, 459 (1968).

8. The police power of the state and municipality are the justification for limiting a property owner's or lessor's traditional right to use his private property as he desires, and in determining whether the invasion of property rights under a purported police power is impermissible under the Constitution of the United States various factual inquiries are properly made by the courts. *Pioneer Trust & Savings Bank v. County of McHenry, supra*. Specifically, even though the validity of each zoning ordinance and conditional use permit must be determined on its own facts and circumstances, an examination of the Illinois cases discloses that among the facts which may be taken into consideration enroute to such determination are the following: 1) the existing uses and zoning of nearby property; 2) the extent to which the property values are diminished by the particular zoning restrictions; 3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; 4) the relative gain to the public as compared to the hardship imposed on the individual property owner; and 5) the suitability of the subject property for the zoned purposes. *La Salle National Bank v. County of Cook, supra*, 12 Ill.2d at 46–47, 145 N.E.2d 65; see also, *Shenk v. Zoning Commission of District of Columbia*, 142 U.S.App.D.C. 267, 440 F.2d 295 (1971). In looking to Illinois law, this court is well aware of the fact that it does not possess the same latitude of powers as the state courts in ruling on the validity and enforceability of the county's action in denying the Sternaman application for a conditional use permit; this court is jurisdictionally re-

strained by 28 U.S.C. § 1331(a) to act only where it finds a violation of the laws and Constitution of the United States by the county's action in this case.

*III. The Evidence Presented*

9. Both parties called various witnesses and introduced a number of documents in support of their respective positions. In determining contested fact issues, the court has relied in substantial part upon its opportunity to hear the live testimony of the witnesses, and to observe their demeanor.

*A. The McHenry County Zoning Ordinance*

10. The County of McHenry some years ago enacted a zoning ordinance pursuant to a statutory delegation of authority from the State of Illinois, S.H.A. Ch. 34, §§ 3151, *et seq.* Sternaman does not in this proceeding challenge the validity of the ordinance *per se*, but only the conduct of the county in application to him of certain ordinance provisions, i. e., Sections 8 and 15, relating to the granting of conditional use permits as a necessary antecedent for the washing, screening or crushing of sand and gravel on farm-zoned property (PX 3).

11. The zoning ordinance (PX 3) divides unincorporated portions of the county into thirteen districts, ranging from single family residences on three or more acres (E District) to heavy industry, including iron and steel mills, cement mills, asbestos manufacturing and other heavy industrial uses (I–2 Industrial District).

12. As earlier noted, the Sternaman land comprises sixty acres located in a rural, unincorporated area of the county; the Sternaman land is now and has for many years been zoned "F–Farming" (PX 1, para. 6). This zoning, among other things, expressly permits as of right the following uses under Section 8(I) of the ordinance:

"Mining, loading and hauling of sand, gravel, humus, black dirt, or other aggregate, but not including any screening, crushing, washing or storage equipment or structures, excepting as may be specif-

ically authorized as a variation for a limited period." (PX 3, pp. 7–8).

*No* district permits as of right the excluded activity cited above, but property in *any* of the thirteen districts may be granted a conditional use permit under Section 15(c)(7) of the ordinance for, *inter alia*, the following uses:

"(7) Quarry, sand pit, gravel pit, top soil stripping, gravel plant, and stone quarry, including crushing, grading, washing and loading equipment . . ." (PX 3, p. 11).

13. In certain zoning districts, a conditional use permit is a necessary antecedent to undertaking the basic operations of mining, loading and hauling of mineral deposits. However, under Section 8(I) quoted above for "F–Farm" zoning, the steps of mining, loading and hauling of mineral deposits may be conducted and the equipment therefor may be used as of right on property so zoned. Also, under the scheme of the ordinance, "unless otherwise prohibited or restricted, a permitted use also allows uses, buildings and structures incidental thereto . . ." (PX 3, p. 3). The county has consistently recognized in respect of others than Sternaman that in F-zoning, it has absolutely no right under its ordinance to regulate the mining and loading of sand, gravel or other aggregate on the property and the transport of the material from the property. Indeed, the record relating to grant of the original conditional use permit for the Sternaman land in 1965 states that:

"As is well known by the Board of Supervisors, petitioners have a right to mine and extract the gravel content without a permit."

Thus, the court finds that Sternaman has an unconditional right on his farm-zoned land to perform the primary use activities contemplated by Section 15(c)(7) for an unlimited term, i. e., mining, loading and hauling sand, gravel and other aggregate. A conditional-use permit under the terms of the ordinance was needed only for those additional on-site processing operations expressly exempted from Section 8(I), i. e., washing, screening and crushing. The ap-

plicable ordinance standards for the granting of conditional use permits for such operations are set forth in Section 15A (PX 3, p. 11).

### B. The Proceedings for Renewal of the Conditional Use Permit

14. An original conditional use permit authorizing certain on-site processing of sand, gravel and other aggregate mined on the Sternaman land was issued in 1965 (PX 5). Sternaman took possession of the land in the spring of 1972 and thereafter operated his business of mining, loading, processing and hauling sand and gravel from the land in normal course without apparent objection from the county through the final denial of the petition for renewal of the permit in August, 1976 (PX 1, para. 5).

15. Sternaman filed a petition to renew the conditional use permit in March, 1976, together with various supporting papers, including a professionally prepared plan for reclamation of the property upon completion of the mining operations (PX 6, 6A–B, 9).

16. Pursuant to the scheme of the ordinance (PX 3, p. 11), a public hearing was held on the Sternaman petition by the County Zoning Board of Appeals (ZBA) on April 28, 1976, at which time record evidence was received including that in support of the petition and that of protestors Robert Carow, Ludwig Wolf and Betty Keeny (PX 7). Members of the ZBA questioned the witnesses for and against the granting of the petition. A resume of the evidence together with the findings and recommendations of the ZBA was transmitted to the Planning and Zoning Committee (PZC) of the County Board of Supervisors in June, 1976 (PX 8). Both the Board of Appeals and the PZC unanimously recommended granting of the petition (PX 3A, p. 14; PX 8) on the basis of the findings made by the ZBA. A cash performance bond for the reclamation in the amount of $5,000 was requested and posted by Sternaman (PX 6C).

17. The Sternaman petition came before the full Board of Supervisors for approval

of the findings and recommendations of the Board of Appeals and PZC on June 14, 1976. The Board denied the Sternaman petition on that date (PX 10, p. 5), reconsideration of the denial was prompted by a minority of the Board on July 20, 1976 (PX 12, p. 4) and the petition was denied for a second time on August 17, 1976 (PX 13, p. 5). Sternaman and the county then became entangled in a series of controversies which need not be recounted here, except to note that Sternaman has exhausted his administrative remedies (I–PX 1, p. 4) and that, on the eve of this lawsuit, Sternaman faced immediate and irreparable harm to his business by reason of the denial of the permit (PX 1, p. 4).

18. The Board of Supervisors did not state its reasons for denial of the petition, never stated what, if any, findings of the Appeals Board it found unsupported by the evidence, never stated why the recommendations of the Appeals Board and PZC were rejected, and never made any findings of its own. The only extant documentary record of the Board action is the recording of the denial in the Board minutes (PX 10, 13), and a brief notice of the denial sent to the Zoning Enforcement Officer (PX 11).

19. The County Board as a quasi-legislative body has broad discretion under its zoning ordinance in deciding what matters it might consider in applications for conditional use permits, and what procedural restraints it might impose on participation by applicants in such hearings. However, the consideration by the Board of matters lacking in any probative value as to the issue before it, and the effective prohibition of any participation in such hearings by applicants, are factors that this court may consider in determining whether or not the Board acted in an arbitrary and capricious manner in denying the conditional use permit, or otherwise acted in a manner inconsistent with the constitutional rights of the applicant for the permit. Likewise the County Board, as with other quasi-legislative bodies, is not required to make findings of fact, and its actions are entitled to a presumption of validity. But when a complainant makes a factual showing indicating that the county has acted arbitrarily, that action cannot be sustained unless the county puts forward, or the court is otherwise able to discern, some basis in fact and law to justify the county's action. *Shenk v. Zoning Commission of District of Columbia, supra,* 142 U.S.App.D.C. at 269, 440 F.2d at 297. The record in this case shows no sufficient basis to vindicate the action of the county in denying the Sternaman permit. On the contrary, the record shows that the county's action herein was arbitrary and capricious and denied to Sternaman the equal protection required by the Fifth and Fourteenth Amendments. *La Salle National Bank v. County of Cook,* 12 Ill.2d 40, 145 N.E.2d 65 (1957); *Nectow v. Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928); *Pioneer Trust & Savings Bank v. County of McHenry, supra* ; *Taylor v. County of Peoria,* 30 Ill.App.3d 685, 333 N.E.2d 726 (1975); *Elmhurst-Chicago Stone Co. v. County of Kane,* 129 Ill.App.2d 190, 262 N.E.2d 612 (1970); *County of DuPage v. Gary-Wheaton Bank,* 42 Ill.App.2d 299, 192 N.E.2d 311 (1963).

20. Mr. Richard Klemm, County Board President, testified under Rule 30(b)(6), Fed.R.Civ.P., as a spokesman for the county on the reasons for the County Board's denial of the Sternaman petition in a pretrial deposition, and likewise testified on the same subject at trial. According to Mr. Klemm, the reasons for denying the Sternaman petition were: a) a concern about the exit of trucks from the Sternaman land onto the road and the "tearing up" of the road thereby incurred; b) a concern over the welfare of school children on the road; c) an alleged declining property value from the mining; and d) an absence of a public need or necessity to mine, since there are many sand and gravel operations in McHenry County (II–16–19). Mr. Klemm acknowledged that at both the July and August, 1976 Board meetings, he made arguments against granting of the Sternaman petition and presented in support of his arguments photographs of vehicles on the Sternaman land (PX 15), a sound recording of noises purportedly emanating from the

Sternaman land (PX 16), and a letter objecting to the mining operations on the Sternaman land (PX 17). All of these materials (PX 15017) were received by Mr. Klemm from one of the objectors before the ZBA; Mr. Robert Carow. None of the photographs or the letter related to objections to the processing operations of Sternaman.

21. Klemm testified that the taped sounds were in his judgment made by front-end loaders and trucks, and not by any processing operations of Sternaman (II–11–31). Klemm admitted that no evidence or argument was presented to the County Board about the nature of the washing, screening or crushing operations on the Sternaman land, other than that contained in the ZBA record (II–35–36), and that there was no objection to the manner in which Sternaman conducted his processing operations (II–35–37). The record herein leads inevitably to the conclusion that Sternaman was denied a conditional use permit by the Board on the basis of consideration of matters relating solely to the activities he was entitled to conduct as of right, i. e., mining, loading and hauling of sand, gravel and other aggregate. The record does not reflect any grounds reasonably related to washing, screening or crushing that were relied upon by the Board in any sense as the basis to deny the permit. Also, as summarized later herein, the evidence shows that standards applied to Sternaman were different than the standards applied to other applicants for conditional use permits in the county, and the standards applied to Sternaman discriminated against him in a constitutionally impermissible manner.

22. The county sought to criticize the sufficiency of the Sternaman application for conditional use permit, and to justify denial of the renewal, on the grounds that the reclamation plan offered by Sternaman was not entirely satisfactory and that the $5,000 cash bond posted by Sternaman was not sufficient to guarantee performance of the reclamation. The testimony of the county on this issue is not convincing. The reclamation plan was prepared by a professional land planner recommended by the county and at least tacitly recognized as an expert in his field by the county's own witnesses. But even aside from these considerations and the fact that the presentation of a comprehensive land reclamation plan and a cash bond have not been imposed on any other applicant for such a conditional use permit in McHenry County as a condition precedent to issuance of the permit, the court finds that requirement of such a reclamation plan and cash bond for its performance are not conditions reasonably related to granting of the permit at issue.

## C. The Sternaman Land

23. The testimony shows that the Sternaman land was first mined for sand and gravel almost thirty years ago, that it has been periodically mined with more or less intensity ever since, that prior to Sternaman's entry on the land in 1972, it was frequently used as an unauthorized garbage dump, that since then a marked cleanup of the property has occurred, that the mining operations have been conducted by Sternaman in a responsible manner, that the washing, screening and crushing operations sought to be conducted by permit produce minimal noise and other disturbance to adjacent properties compared to the mining, loading and transport conducted as of right, that the aforesaid operations were and are wholly conducted within the confines of the Sternaman land, and that these operations have never been the source of complaint by the neighbors or the county during the term of the original permit or thereafter.

24. The record is clear that the Sternaman land is swampy in parts and rocky and sandy in parts, that the land is wholly unsuitable for farming in its present state, and that Sternaman intended and still intends to extract and sell the far less valuable unprocessed minerals if a processing permit is denied, and that the mining, loading and transport would therefore continue.

25. The evidence shows that the Sternaman land contains a comparatively scarce and valuable deposit of natural "blending" sand which is an important constituent in

concrete and asphalt; that the nearest equivalent deposit of such material is located at a substantial distance, a factor that significantly affects cost and marketability in favor of Sternaman and which benefits local users of such blend sand in the northern Illinois region; that the valuable blending sand can only be sold as low grade "fill sand" without washing and screening; that the wasting of this limited natural asset through sale as fill sand is to the public detriment; that Sternaman is a significant supplier of blending sand to concrete and asphalt plants in and around McHenry, that the resultant loss of revenue and profit to Sternaman would be severe, e. g., the difference between approximately 65¢–75¢ per ton and $2.50 per ton, depending on whether or not the comparatively inexpensive washing, screening and crushing operation is performed; that Sternaman mines over one hundred thousand tons of sand and gravel annually of an estimated total deposit of approximately one million tons; that the mining will be completed within ten years or less; and that the denial of the conditional use permit condemns a valuable asset to being salable as only a residue, low grade material. The words of the Illinois Appellate Court in *Elmhurst-Chicago Stone Co. v. County of Kane, supra,* at 617, are applicable with equal force here:

"Serious consideration must be given the public generally. The plaintiff contends that there is a great shortage of sand and gravel in northern Illinois, including this area. It is agreed that there is no substitute for sand and gravel in the making of concrete—an integral and necessary part of most all construction. Unlike crops in the field, these minerals do not replace themselves.

* * * * * *

. . . that there is now and will be a great need for mineral aggregates, and that the loss of the sand and gravel on the subject property would be detrimental to the common good of the entire area, and that it was the opinion of the county's own zoning expert that a special use should have been granted here."

See also *County of DuPage v. Gary-Wheaton Bank,* 42 Ill.App.2d 299, 192 N.E.2d 311 (1963).

26. Sternaman, commencing in early 1972, expended substantial sums of money for semi-permanent installations on the land for equipment for weighing, washing, screening and crushing sand and gravel. This action was undertaken by Sternaman in reasonable reliance on the original conditional use permit, and the reasonable expectation that the requested renewal permit would be granted to enable an orderly completion of the mining operation.

27. The testimony establishes that the highest and best use of the Sternaman land is effected by permitting a continuation of the sand and gravel mining and processing operations to an orderly conclusion, in the same manner as the county has permitted with respect to similar land within Nunda Township and elsewhere within the county. Even the County Board President, Mr. Klemm, admitted that such use was second only to possible condemnation of the land by the Conservation Department, an offer that has never been made to Sternaman (II–54–55).

### D. The Conduct of the County Vis-A-Vis Other and Similar Petitions For Conditional Use Permits

28. The evidence demonstrates that the county has applied different, and far more demanding, standards to Sternaman than it has to other petitioners similarly situated within the Nunda Township and elsewhere throughout the county. The evidence likewise shows that the county has consistently granted conditional use permits to numerous sand and gravel mining operations to permit on-site processing, both before and after the date of the denial of the Sternaman permit, in areas having a much denser and more proximate residential population. All of these businesses conduct mining and processing operations more extensive than those of Sternaman. The court finds that the treatment of Sternaman as gauged vis-a-vis similarly situated sand and gravel operations in the county was arbitrary and

capricious, and denied him equal protection of the laws.

29. The county's Zoning Enforcement Officer, Mr. Glen Peterson, testified that there are fifteen sand and gravel pits within the county which presently are operating under conditional use permits for washing, crushing and screening (IV–60). There are four more pits operating such processing operations under Grandfather provisions of the zoning ordinance, and at least ten other pits are operating, but apparently without having applied for processing rights (IV–60–65). Mr. Peterson also testified that only two petitions, other than Sternaman's, have been denied within the last twenty years (DX 1–3), and one of those petitions was effectively granted by the Illinois courts pursuant to a writ of mandamus (DX 4; IV–56–59). The testimony of Sternaman's witnesses supports the conclusion that there are still other active sand and gravel operations; and the county concedes that there are many more, possibly one hundred, dormant sand and gravel pits within the territory of the county. In this regard, a rich, glacial deposit of sand and gravel is found within the county and up to forty percent of all of the sand and gravel supplied to northern Illinois is mined within the county. In order for such sand and gravel to be of utility in making concrete and asphalt and for other high grade operations, it is necessary that the processing operations of washing, screening and crushing be performed on the mined materials. There can be no doubt that a strong public interest favors mining of such depletable assets in the most efficient and useful manner, and this inevitably means processing. While the county might opt to limit the places where mining, loading and hauling of such minerals may be conducted, it seems clear that once the county wholly surrenders this right, as it has done with the Sternaman land, the conditions imposed on the granting of conditional use permits must bear some rational relation to the processing to be regulated, and may not be merely an attempt to indirectly regulate mining, loading and hauling of such minerals.

30. The official records of the county respecting such conditional use permits as introduced into evidence by Sternaman (PX 18, 18A–B, 25–31A, 33–36) show that the county has consistently granted ten year or longer permits and has consistently renewed such permits for a like term. The county has failed to point out any rational basis for setting Sternaman apart from the other applicants noted above and making him subject to different and arbitrary standards.

31. The record shows that there are four larger sand and gravel pits with processing permits operating within a two to three mile radius of the Sternaman land, and that some of these pits are in a residential setting as opposed to the near rural location of the Sternaman land. One of these sand and gravel pits, the Road Materials pits, is literally located directly across the street from the Sternaman land (PX 18, 18A–B). The mining and processing operations conducted there are two to three times larger than those of Sternaman's, with a correspondingly greater traffic. They crush rocks up to an 18 to 20 inch dimension, while Sternaman crushes rocks no larger than a 6 inch diameter; the crushing operation of the Road Materials pit creates greater noise and is located closer to the road (I–24–25; II–43–46). The Road Materials pit received a first ten year permit in 1963 and this permit was renewed for an additional ten years with a further five year automatic renewal commencing in September, 1973 (PX 18). This operation was granted the renewal without presentation of a specific reclamation plan prior to the renewal and was not required to post a bond of any kind (II–45). The conditions upon which the Road Materials permit was granted were in all material and comparable respects far more lenient than the conditions recited in the Sternaman petition which the Board denied.

32. After the filing of this suit, the county discovered that the largest sand and gravel operation in the county, McHenry Sand and Gravel, had been operating wash-

ing, screening and crushing operations, as well as an asphalt plant, for two years following expiration of their permit. No application had been made for a renewal of the permit, and the county had not cited them for any violations of the ordinance. The testimony reveals that the operations at this pit are of an extraordinary magnitude—perhaps fifty times or more larger in all respects than the Sternaman operation. The McHenry pit is only about four miles from the Sternaman land, but by reason of its proximity to the town of McHenry is in a far more residential area than the Sternaman land.

33. The records show that the McHenry Sand and Gravel operation applied for a renewal of its lapsed conditional use permit in or about July, 1977, a public hearing was held on July 27, 1977 before the ZBA, the ZBA recommended granting the permit on August 9, 1977 (PX 31), and the County Board granted the permit shortly thereafter (PX 31A). Again, the permit was for a ten year term and was in all material and comparable respects less demanding than the petition of Sternaman which the County Board denied.

### E. The Interests of Adjacent Property Owners and the County as a Whole

34. There is no uniformity of property uses in the area of the Sternaman land, but rather the uses are of a heterogeneous nature. To the east of the Sternaman land, there is a Commonwealth Edison right-of-way which is swampy land; to the west is a high section of twenty acres of tillable land; to the north is a road across which is located the Road Materials pit; and to the south is a woods with three homes. These homes are, for practical purposes, as close to the Road Materials operation as they are to the Sternaman land. The impact on these specific residences, environmentally and from the standpoint of property values, could hardly be said to be altered significantly by the refusal to grant the Sternaman conditional use permit. This is because Sternaman would still be privileged to continue the mining operations and because the

much larger Road Materials facility would continue to operate without change.

35. The three residential property owners contiguous to the Sternaman land each acquired their residences when the Sternaman land was in a poorer condition than it is now. Sternaman has improved his property. With granting of the permit and the contemplated reclamation, it appears that the property values would be significantly enhanced upon completion of the mining. Without the permit it seems likely, as Sternaman testified at trial, that sufficient funds will not be available to enable the contemplated reclamation. On balance, therefore, the record amply supports the conclusion that no significant, negative impact would immediately befall any of the adjacent property owners if the Sternaman conditional use permit were renewed, and in the long run, it appears probable that they will achieve significant benefit.

36. The hardship to Sternaman flowing from the denial of the permit, according to his uncontroverted testimony, threatens his very business existence on the land, which business is the primary source of income for support of his family (PX 2, p. 5). In dollar terms, the washed and screened minerals are marketable at three to four times the going price for the raw minerals, and at a much greater profit margin. Denial of the permit literally condemns a valuable and nonreplaceable asset, i. e., a high quality natural deposit of blend sand, to sale and use as low grade fill sand. In terms of a total of roughly one million tons of mineable minerals remaining in the land, the gross dollar loss is approximately $1,500,000 of $2,000,000 total mineral value. The impact of such a business loss on a small, sole proprietorship is obviously serious, if not fatal.

37. The Supreme Court of Illinois has held with respect to the same McHenry County Zoning Ordinance here at issue that an exercise of zoning power is invalid under the similar constitutional standards of the state where such "involves an invasion of private rights without reasonable relation to the public welfare". *Pioneer Trust &*

*Savings Bank v. County of McHenry, supra,* and where

". . . the gain to the public, if any, is small compared to the hardship imposed upon the plaintiffs by the zoning restriction."

*Id.;* see also *Weitling v. County of Du Page,* 26 Ill.2d 196, 186 N.E.2d 291 (1962); *People ex rel. v. City of Chicago,* 402 Ill. 321, 331, 83 N.E.2d 592 (1949).

The same basic standard has been stated thusly by the Illinois Supreme Court in *Illinois National Bank & Trust Co. v. County of Winnebago,* 19 Ill.2d 487, 167 N.E.2d 401, 404 (1960):

"The presumption of validity [of a zoning ordinance] is overcome, however, where the evidence shows a destruction of property value in the application of the ordinance and an absence of any reasonable basis in public welfare requiring the restriction and resulting loss." (matter in brackets added)

See also *Elmhurst-Chicago Stone Co. v. County of Kane,* 129 Ill.App.2d 190, 262 N.E.2d 612 (1970).

The above standards are unequivocally met in this case; the court finds that the refusal to grant a conditional use permit to Sternaman violates his constitutional right to due process of law in that such refusal was arbitrary and capricious.

*IV. Conclusions of Law*

1. This court has personal and subject matter jurisdiction. 28 U.S.C. § 1331. Venue is proper in this district and division.

2. There exists a justiciable controversy between the parties with respect to the subject matter here in dispute, and Sternaman has exhausted his administrative remedies before institution of this suit. 28 U.S.C. §§ 2201, 2202.

3. The conduct of the county in applying to Sternaman standards that were effectively different from those applied to other applicants for conditional use permits, and its conduct in refusing to renew the conditional use permit for the Sternaman land upon terms and conditions reasonably comparable to those of similarly situated sand and gravel operations within the county denied to Sternaman, under the facts of this case, "equal protection" and was arbitrary and capricious, thereby denying to Sternaman "due process" in the sense that such conduct violated Sternaman's constitutional rights, particularly his rights as specified in the Fifth and Fourteenth Amendments. *Pioneer Trust & Savings Bank v. County of McHenry, supra; La Salle National Bank v. County of Cook, supra,* 12 Ill.2d at 45–47, 145 N.E.2d 65; *Elmhurst-Chicago Stone Co. v. County of Kane, supra* at 617; *Nectow v. Cambridge, supra; Shenk v. Zoning Commission of District of COlumbia. supra; Midland Coal Corp. v. County of Knox,* 1 Ill.2d 200, 115 N.E.2d 275 (1953); *County of DuPage v. Gary-Wheaton Bank, supra; Taylor v. County of Peoria, supra.*

4. Sternaman is entitled under Rule 65, Fed.R.Civ.P., to permanent injunctive relief restraining the county from exercising Sections 8 and 15 of its zoning ordinance to deny Sternaman his constitutional rights as above recited.